**Nicholas J. Henderson, OSB #074027**
nhenderson@portlaw.com
Motschenbacher & Blattner LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Fax: (503) 417-0528

    Of Attorneys for Debtor-in-Possession

**Douglas R. Ricks, OSB #044026**
doug@vbcattorneys.com
Vanden Bos & Chapman, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: (503) 241-4861
Fax: (503) 241-3731

    Of Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>SUNSHINE DAIRY FOODS MANAGEMENT, LLC<br><br>                Debtor-in-Possession. | Bankruptcy Case No. 18-31644-pcm11 |
| In re:<br><br>KARAMANOS HOLDINGS, INC.<br><br>                Debtor-in-Possession. | Bankruptcy Case No. 18-31646-tmb11<br><br>JOINT APPLICATION TO EMPLOY PROFESSIONAL (BOVERMAN & ASSOC.) |

    Pursuant to 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014, the above-captioned Debtors-in-

Possession (collectively "Debtors") move the Court for entry of an Order authorizing them to employ

Page 1 of 3    JOINT APPLICATION TO EMPLOY PROFESSIONAL
(BOVERMAN & ASSOC.)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11   Doc 20   Filed 05/11/18

Daniel J. Boverman and Boverman & Associates, LLC, 11285 SW Walker Rd., Portland, OR 97225 (collectively, the "Professional") to provide services including, but not limited to, the services listed on the Professional's Engagement Agreement, attached as **Exhibit A**. In support of this application, the Debtor represents the following:

1. On May 9, 2018 (the "Petition Date"), the Debtors filed herein a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtors are continuing in the management and possession of their respective businesses and properties as debtors in possession under section 1107. As of the date hereof, trustee have not been appointed.

2. The Debtors require the assistance of business/turnaround consultant to perform the services outlined in the attached **Exhibit A**.

3. The Debtors desire to employ the Professional as the estates' consultant in the above-captioned proceedings.

4. Debtors selected the Professional for the reason that the Professional is competent and experienced in the field of business and turnaround consulting.

5. To the best of the Debtors' knowledge, the Professional has no connection with the creditors or any other adverse party or its attorneys.

6. To the best of the Debtors' knowledge, the Professional represents no interest adverse to the Debtor or the estate.

7. The proposed rate of compensation, subject to final court approval, is the customary hourly rates in effect, plus expenses, when services are performed by the Professional and staff. The current hourly rates of the persons anticipated to perform services on the case are as follows:

Page 2 of 3    JOINT APPLICATION TO EMPLOY PROFESSIONAL
               (BOVERMAN & ASSOC.)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 20    Filed 05/11/18

| Name: | Title: | Rate: |
|---|---|---|
| Daniel J. Boverman | Consultant | $325.00 / hour |

These hourly rates are subject to periodic adjustment to reflect economic conditions and increased experience and expertise.

8. Attached as **Exhibit B** is a proposed order authorizing the Debtors to employ the Professional, and approving the terms and conditions of the Professional's engagement.

WHEREFORE, Debtors pray that they be authorized to employ and appoint Boverman & Associates, LLC as business and turnaround consultant. The Debtors also request approval of the terms and conditions of the Professional's engagement as set forth in the attached **Exhibit A**.

PRESENTED BY:

MOTSCHENBACHER & BLATTNER LLP            VANDEN BOS & CHAPMAN, LLP

By:/s/Nicholas J. Henderson                              By:/s/Douglas R. Ricks
   Nicholas J. Henderson, OSB #074027              Douglas R. Ricks, OSB #044026
   Of Attorneys for Debtor-in-Possession            Of Attorneys for Debtor-in-Possession
   Karamanos Holdings, Inc.                         Sunshine Dairy Foods Management, LLC

Dated: May 10, 2018                                      Dated: May 10, 2018

Page 3 of 3   JOINT APPLICATION TO EMPLOY PROFESSIONAL
              (BOVERMAN & ASSOC.)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 20    Filed 05/11/18



**PROPRIETARY AND CONFIDENTIAL**

May 7, 2018

Boards of Directors
Karamanos Holdings, Inc.
Sunshine Dairy Enterprises, Inc.
Mr. Nicholas Davidson, III
President and Director
Karamanos Holdings, LLC
Sunshine Dairy Enterprises, Inc.
Mr. Michael D. Anderson
Chief Executive Officer and President
Sunshine Dairy Foods, LLC
801 NE 21st Street
Portland OR 97232

Dear Sirs:

I am pleased to confirm, on behalf of Boverman & Associates, LLC ("B&A"), our engagement to provide Karamanos Holdings, Inc. ("KHI") and its subsidiaries Sunshine Dairy Enterprises, Inc. ("SDEI") and Sunshine Dairy Foods Management, LLC ("SDFMLLC") (collectively the "Company" or "Companies") (i) certain financial advisory services in connection with the Company's preparation for a possible Chapter 11 case (the "Bankruptcy Case") under the United States Bankruptcy Code (the "Bankruptcy Code") and (ii) commencing immediately prior to filing of the Bankruptcy Case the services of Daniel J. Boverman as Chief Restructuring Officer of each of the Companies and to provide the services described in more detail below.

*Objectives and Scope*

We understand the initial engagement objective to be to assist the Companies in an advisory capacity in commencing the Bankruptcy Case ("Phase I"). The scope of Phase I of the engagement will include matters typically handled by a financial advisor in a preparing for a Chapter 11 bankruptcy case, including among other things, assisting the Company and its bankruptcy counsel with strategic planning; communications with Companies' directors and their representatives; preparation of motions; cash management systems; financial analysis; initial cash flow forecasts; preparations for cash controls including evaluation of commitments and disbursements policies and practices; and obtaining a general understanding of the Companies financials affairs and operations in preparation for Phase II of the engagement. Phase I of the engagement will be conducted by Daniel J. Boverman. If we propose to add any other B&A professional(s) to Phase I of the engagement, we will first request the Company's consent in its reasonable discretion. During Phase I Mr. Boverman will report to Mr. Davidson with respect to KHI and SDEI and to Mr. Anderson with respect to SDFMLLC.

Each of the Companies intend to appoint Mr. Boverman Chief Restructuring Officer effective immediately prior to the filing of the Bankruptcy Case. As the Companies's Chief Restructuring Officer ("CRO"), Mr. Boverman will report directly to the Boards of Directors of the Companies (the "Boards"), with the Boards representative Mr. Davidson being the primary contact in between board meetings. Subject to the fiduciary duties of the Board and any limitations imposed by applicable state corporate or limited liability company law, Mr. Boverman will have decision making authority on all matters related to the Company's activities and the Bankruptcy Case, including all operational and financial activities which affect the liquidity and profitability of the Companies; provided, however, that the Boards must approve in advance the following types of transaction: (i) all transactions outside the ordinary course of business, (ii) any and all financing transactions, (iii) the hiring of consultants, (iv) the appointment of any officer or (v) the filing of any Bankruptcy Case. In addition to Mr. Boverman's ordinary course duties as CRO, the role of Mr. Boverman will include working with the Companies executives, managers and employees, outside counsel for the Companies and the Companies' other professionals and advisors, to provide the following services during Phase II of the engagement pursuant to this Agreement (collectively, including Phase I, the "Services"):



A. Actively manage the business of SDFMLLC working closely with other officers, managers and employees with respect to sales, order entry and acceptance, production scheduling; hiring and terminations; staffing and scheduling; contractual and other commitments including placement of purchase orders, disbursements and other matters.

B. Establish and communicate and a commitments and disbursements policy designed to ensure that Mr. Boverman approves all significant financial commitments of the Companies prior to such commitments being made and all significant disbursements prior to such disbursements being made;

C. Represent the interests of the Companies during communications and negotiations with the Companies' customers, suppliers, employees, lenders, consultants and advisors;

D. Attend Board Meetings and report progress on operations, financial affairs, lender negotiations, asset sales and other matters;

E. Analyze, develop and implement all aspects of the Company's operational and financial restructuring plans. The primary areas of focus are the following:

    a. Liquidity

        i. Oversee establishment and maintenance of a cash flow and cash collateral forecast including review and analysis of actual results and comparison to forecasts

        ii. Develop strategies to maintain and improve liquidity

    b. Evaluate the possibility that SDFMLLC's East plant might be able to continue as a going concern following the completion of the restructuring and consummation of the Bankruptcy Case, including the related and necessary reorganization of sales, general, administrative and other functions to reduce those costs to an acceptable level for this to be attractive; the capital requirements and structure for this business should it survive. Make recommendations to the Boards with respect feasibility, attractiveness, risks, cash flow implications and the likelihood of being able to accomplish this in the Bankruptcy Case.

    c. Prepare a liquidation analysis setting forth a range of expected outcomes for the Companies' restructuring plans including the expected wind-down of SDFMLLC's West plant and the value if liquidated of the SDFMLLC's East plant.

    d. Oversee financial reporting including lender and United States Trustee reporting requirements

    e. Seek to complete a sale of certain assets to a strategic buyer;

    f. Select and engage a real estate broker to (i) provide broker opinions of value for the Companies' real properties and (ii) conduct a competitive sale process for the SDFMLLCs West plant and (iii) depending on the outcome of the decision whether to continue operating SDFMLLC's East plant as a going concern and the capital structure of the remaining business conduct a competitive sale process for the SDFMLLCs East plant. _Explore with_

F. Assist the Companies' bankruptcy counsel with respect to preparing various documentation required for the Bankruptcy Case, including various motions such as for use of cash collateral; statement of financial affairs and schedules; declarations and the plan of reorganization;



G. Meet with and serve as contact with respect to the Company's financial and operational matters for the Company's creditors any committees formed during the Bankruptcy Case.

We intend that all Phase II services will be conducted by Mr. Boverman only, and that internal Company personnel or appropriate less costly external resources be used to accomplish on a timely basis the many tasks that are necessary to support Mr. Boverman's duties as CRO. However, the Companies understand that there is no assurance, particularly given the Companies' present condition and expectations for the Bankruptcy Case that adequate internal or external resources will be available. As such, the Companies acknowledge that it may be necessary for B&A to add staff to the engagement if a more economic alternative is not available. B&A will notify the Boards in advance if this is necessary and provide the identity and billing rate of such additional staff at that time. During Phase II of the engagement Mr. Boverman will the boards of directors of KHI and SDFMI with Mr. Davidson being his primary contact with respect to his CRO capacity for KHI and SDEI and to KHI and its board with respect to his CRO capacity for SDFMLLC with Mr. Davidson being his primary contact.

*Limitation on Services*

B&A's services are limited to those specifically noted in this agreement. The services to be provided by B&A do not include accounting, auditing, any type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSCS or other such state and national professional bodies, tax related assistance or other advisory services, except as specifically described in this agreement. B&A shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with this engagement. B&A's services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. The accuracy and completeness of such information submitted by the Company to B&A for analysis, on which B&A relies and which will form the basis of B&A's conclusions, are the responsibility of the Companies, to the extent the any of Companies asks us to reach conclusions or form opinions, B&A shall do so without regard to or consideration of the impact that such conclusions or opinions may have upon the initiation or outcome of any litigation.

B&A's services hereunder do not include preparing, auditing or otherwise attesting in any way (including without limitation, the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Company's financial projections. The Companies acknowledges that it will remain at all times solely responsible for its financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. There will usually be differences between the projected and actual results, and those differences may be material. To the extent that, during the performance of services hereunder, B&A is required to consider the Companies' financial projections, the parties acknowledge that B&A's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide any assurance that B&A might not become aware of significant matter affecting the reasonableness of the projections that might be disclosed by more extensive procedures. The Companies understand and agree that B&A will have no responsibility or liability relating to any such differences.

*Our Conflicts of Interest*



This confirms that we have performed a preliminary analysis of our relationships with other current and former clients and have reasonably concluded that we do not have any such relationships that could reasonably be expected to preclude us from performing, or materially limit the scope of, the Engagement. Each of the Companies hereby agrees that B&A providing services to each of the Companies shall not represent a conflict of interest and indemnifies Mr. Boverman and B&A with respect to any asserted conflict or liability.

*Company Responsibilities*

In connection with B&A's provision of the services, the Company shall perform those tasks and assume those responsibilities specified herein and as stated elsewhere in this agreement (the "Company Responsibilities"). The Company understands that B&A's performance depends on the Company's timely decisions and approvals by the Company. The Company shall promptly provide B&A with all decisions, approvals, and acceptances as requested by B&A, and further, B&A shall be entitled to rely on all such decisions and approvals of the Company in connection with the Services. Further, the Company understands that B&A is relying upon the information that the Company provides, and consequently, the Company represents that all information (whether written or oral) and materials given or made available by it to B&A in order for B&A to provide the Services hereunder will be current, complete, accurate, will not omit to state any material fact and will be updated on a prompt and continuous basis. B&A's ability to perform acceptably under this agreement is expressly conditioned and contingent upon the foregoing understanding.

The Company shall seek an order authorizing the employment of B&A pursuant to the term of this Agreement, as a professional person pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders. The Company shall submit B&A's employment application as soon as practicable following the commencement of the Company's Bankruptcy Case. The employment application and the proposed order authorizing employment by B&A shall be provided to B&A as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to B&A in its sole discretion. We acknowledge and agree that a copy of this Engagement Letter will be attached to the employment application.

B&A shall have no obligation to provide services under the Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless B&A's retention under this Agreement is approved by final order of the Bankruptcy Court no longer subject to appeal and which is acceptable to B&A. If the order authorizing the employment of B&A is not obtained, or is later reversed or set aside for any reason, B&A may terminate this Agreement, and the Company shall reimburse B&A for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

The successful delivery of our services is dependent on (i) timely and effective completion of your responsibilities, (ii) the accuracy and completeness of any assumptions, and (iii) timely decisions and approvals by your management that may be required. The Company will be responsible for any delays, additional costs, or other liabilities caused by any deficiencies in the assumptions or in carrying out of the Company's responsibilities.

*Fees and Expenses*

We will bill on an hourly basis based on the actual hours worked and the following hourly billing rates:

| *Individual* | *Hourly Rate* |
|---|---|
| Daniel J. Boverman | $325 |



For Phase I we will bill on a weekly basis, by email, and our Phase I invoices are due by wire transfer upon presentation and payment must be received by Friday of the week following the week billed. We understand that our bills should be sent to the following:

        Mr. ~~Nicholas~~ Norman Davidson, III [initialed 5/9/18]
        Director and President
        Karamanos Holdings, LLC
        Sunshine Dairy Enterprises, Inc.
   Email: nick@normandavidsonlaw.com

With copies to:  Michael ~~A.~~ Q. Anderson [initialed 5/8/18]
        Chief Executive Officer and President
        Sunshine Dairy Foods Management, LLC
        Email: manderson@sunshinedairyfoods.com

        and

        Douglas R. Ricks
        Vanden Bos & Chapman, LLC
        Email: doug@vbcattorneys.com

*Retainer*

Our services commenced April 30, 2018 with no retainer in good faith. We require a retainer of $50,000 be paid by Monday May 7, 2018 before we can continue work past that date (the "Phase I Retainer"). The Phase I retainer will be applied as follows:

(1) Assuming that you do commence the Bankruptcy Case, immediately prior to its filing we will apply the Phase I Retainer to all amounts due to us, provided that, such amount drawn against the Phase I Retainer may include an estimate for fees and expenses incurred by us but not yet billed prior to the date you intend to file your bankruptcy petition. The precise amount due to us as of your petition date will be determined upon the final recording of all of our time and expense charges. The excess Phase I Retainer, if any, will be held by us for application to post-petition fees and expenses that are finally allowed by a bankruptcy court. If no such fees are allowed on a final basis by a bankruptcy court the excess retainer will be refunded to you at the conclusion of the engagement; or

(2) if you do not file a bankruptcy petition, the retainer will either be applied to our final invoice to you at the conclusion of the engagement or will be refunded to you at that time.

If our fees and expenses billed and estimated immediately prior to filing of the Bankruptcy Case exceed the unused Prepetition Retainer, the Companies shall pay such excess to B&A by wire transfer prior to filing of the Bankruptcy Case.



*Business Terms*

The attached General Business Terms apply to this engagement.

\* \* \* \* \* \*

Please indicate your agreement with these terms by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

BOVERMAN & ASSOCIATES, LLC

By: _____
Daniel J. Boverman
Principal and Managing Member

Attachments:   General Business Terms

Acknowledged and Accepted:

Karamanos Holdings, Inc.
By: _____
Title: _____President_____
Date: _____5-9-18_____

**Sunshine Dairy Enterprises, Inc.**
By: _____
Title: _____President_____
Date: _____5-9-18_____

**Sunshine Dairy Foods Management, LLC**
By: ____Michael D. Anderson_____
Title: _____Pres & CEO_____
Date: _____5-9-18_____

Exhibit A - Page 6 of 10                                                      6
Case 18-31644-pcm11    Doc 20    Filed 05/11/18



**Attachment to Engagement Letter dated May 7, 2018 between
Boverman & Associates, LLC, Karamanos Holdings, Inc., Sunshine Dairy Enterprises, Inc. and
Sunshine Dairy Foods Management, LLC**

**GENERAL BUSINESS TERMS**

These General Business Terms, together with the Engagement Letter (including any and all attachments, exhibits and schedules) constitute the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms and the terms of the Engagement Letter, these General Business Terms will govern, except to the extent the Engagement Letter explicitly refers to the conflicting term herein.

**1. Our Services and Deliverables** We will provide the services and furnish the deliverables (the "Services") as described in our Engagement Letter and any attachments thereto, as may be modified from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venture or partner, and will determine the method, details and means of performing our Services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll and other applicable employee withholdings.

**3. Fees and Expenses** (a) Our fees and payment terms are set out in our Engagement Letter. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices.)

(b) You acknowledge that where out-of-town personnel are assigned to any project on a long-term basis (as defined from time to time in the applicable provisions of the Internal Revenue Code and related IRS regulations, and currently defined, under IRC Section 162, as a period of time reasonably expected to be greater than one year), the associated compensatory tax costs applied to out-of-town travel and living expenses also shall be calculated on an individual basis, summarized, and assessed to such personnel. In such cases, the expenses for which you shall reimburse us hereunder shall be deemed to include the estimated incremental compensatory tax costs associated with the out-of-town travel and living expenses of our personnel, including tax gross-ups. We shall use reasonable efforts to limit such expenses.

(c) We reserve the right to suspend Services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes** (a) You will be responsible for and pay all applicable sales, use, excise, value added, services, consumption and other taxes and duties associated with our performance or your receipt of our Services, excluding taxes on our income generally.

(b) If you are required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from our payment, then the amount payable by you upon which the withholding is based shall be paid to us net of such withholding. You shall pay any such withholding to the applicable tax authority. However, if after 120 days of the withholding, you do not provide us with official tax certificates documenting remittance of the taxes, you shall pay to us an amount equal to such withholding. The tax certificates shall be in a form sufficient to document qualification of the taxes for the foreign tax credit allowable against our corporation income tax.

**5. Confidentiality and Privacy** (a) With respect to any information supplied in connection with this engagement and designated by either of us as confidential, or which the other should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure ("Confidential Information"), the other agrees to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. For purposes of the foregoing, we understand that all information regarding the anticipated Bankruptcy Case is confidential. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed, (v) disclosed pursuant to legal requirement or order, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits and litigation.



(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other archival copies for recordkeeping or quality assurance purposes and receiving party shall make no unauthorized use of such copies.

(c) We agree to use any personally identifiable information and data you provide us only for the purposes of this engagement and as you direct, and we will not be liable for any third-party claims related to such use. You agree to take necessary actions to ensure that you comply with applicable laws relating to privacy and/or data protection, and we are not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.

(d) We may also mention your name and provide a general description of the engagement in our client lists or marketing materials after the commencement of the Bankruptcy Case.

**6. Our Deliverables and Your License** Upon full and final payment of all amounts due us in connection with this engagement, all right, title and interest in the deliverables set out in our Engagement Letter will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how and software ("Boverman & Associates, LLC Property"), including such information as existed prior to the delivery of our Services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of Services for you. To the extent our deliverables to you contain Boverman & Associates, LLC Property, upon full and final payment of all amounts due us in connection with this engagement, we grant you a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent. If our deliverables are subject to any thirdparty rights in software or intellectual property, we will notify you of such rights. Our deliverables are to be used solely for the purposes intended by this engagement and may not be disclosed, published or used in whole or in part for any other purpose.

**7. Your Responsibilities.** To the extent applicable, you will cooperate in providing us with office space, equipment, data and access to your personnel as necessary to perform the Services. You shall provide reliable, accurate and complete information necessary for us to adequately perform the Services and will promptly notify us of any material changes in any information previously provided. You acknowledge that we are not responsible for independently verifying the truth or accuracy of any information supplied to us by or on behalf of you.

**8. Our Warranty** We warrant that our Services will be performed with reasonable care in a diligent and competent manner. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 10 days after identifying any non-conforming Services. The notice will specify and detail the non-conformance and we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9. Liability and Indemnification** (a) This engagement is not intended to shift risk normally borne by you to us. To the fullest extent permitted under applicable law, you agree to indemnify and hold us and our personnel, agents and contractors harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or other claim brought against us by a third party, including a subpoena or court order, arising from or relating to any Services that you use or disclose, or this engagement generally. This indemnity shall not apply to the extent a claim arises out of our gross negligence or willful misconduct.

(b) We will not be liable for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or

8



business opportunity). Further, our liability relating to this engagement will in no event exceed an amount equal to the fees (excluding taxes and expenses) we receive from you for the engagement.

(c) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

(d) The Company shall immediately following the appointment of Mr. Boverman as CRO take all steps necessary to include Daniel J. Boverman as an insured party under its Directors & Officers insurance policy and to provide copies of related documentation and the policy to Mr. Boverman

**10. Non-Solicitation** During the term of this engagement, and for a period of one year following its expiration or termination, you will not directly or indirectly solicit, employ or otherwise engage any of our employees (including former employees) or contractors who were involved in the engagement without our consent, not to be unreasonably withheld.

**11. Termination**

(a) Termination for Convenience. Either party may terminate this Agreement without cause at any time on 30 days' prior written notice to the other.

(b) Termination for Breach. Either party may terminate this Agreement for breach if, within 15 days' notice, the breaching party fails to cure a material breach of this Agreement.

✓ (c) To the extent you terminate this Agreement ~~for convenience~~ *without cause*, you will pay us for all Services rendered, effort expended, expenses incurred, contingent fees (if any), or commitments made by us to the effective date of termination. To the extent you terminate this Agreement for breach, you will pay us for all conforming Services rendered and reasonable expenses incurred by us to the effective date of the termination.

(d) Further, we reserve the right to terminate this Agreement at any time, upon providing written notice to you, if conflicts of interest arise or become known to us that (i) were not disclosed to us prior to the commencement of the Bankruptcy Case and (ii) in our reasonable judgment, would materially impair or limit our ability to perform the Services objectively.

(e) The terms of this Agreement which relate to confidentiality, ownership and use, limitations of liability and indemnification, non-solicitation and payment obligations shall survive its expiration or termination.

**12. General** (a) This Agreement supersedes all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon without giving effect to conflict of law rules. The parties hereto agree that any and all disputes or claims arising hereunder shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any arbitration will be conducted in Portland, Oregon. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties consent and commit themselves to the jurisdiction of the courts of the State of Oregon for purposes of any enforcement of any arbitration award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

(e) If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

(f) This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action or other right in law or in equity for any matter governed by or subject to the provisions of this Agreement

9



* * *

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| In re:<br><br>SUNSHINE DAIRY FOODS MANAGEMENT, LLC<br><br>Debtor-in-Possession. | Bankruptcy Case No. 18-31644-pcm11 |
|---|---|
| In re:<br><br>KARAMANOS HOLDINGS, INC.<br><br>Debtor-in-Possession. | Bankruptcy Case No. 18-31646-tmb11<br><br>ORDER AUTHORIZING EMPLOYMENT OF PROFESSIONAL (BOVERMAN & ASSOC.) |

THIS MATTER having come before the Court on the application of Sunshine Dairy Foods Management, LLC ("Sunshine Dairy") and Karamanos Holdings, Inc. ("KHI"), Debtors-in-Possession (together, the "Debtors"), for an order authorizing them to employ Daniel J. Boverman and Boverman and Associates, LLC (together, "B&A") as business and turnaround consultants for the Debtors; the Court having reviewed the motion and accompanying 2014 statement, and being otherwise duly advised; now, therefore,

Page 1 of 2    ORDER AUTHORIZING EMPLOYMENT OF PROFESSIONAL (BOVERMAN & ASSOC.)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit B - Page 1 of 2**
Case 18-31644-pcm11    Doc 20    Filed 05/11/18

IT IS HEREBY ORDERED as follows:

1)  Debtors' Joint Application to Employ B&A is approved, and Debtors are authorized to employ B&A as of the Petition Date as Debtors' business and turnaround consultants, on the terms and conditions set forth in B&A's engagement agreement that was attached Exhibit A to the Debtors' Joint Application to Employ Professional (Boverman & Assoc.); and

2)  The Debtors shall pay said B&A for their services, and shall reimburse expenses incurred by said professional, only upon the entry of an order of the Court approving such fees and expenses under 11 U.S.C § 330, and other applicable provisions of the Bankruptcy Code and Local Bankruptcy Rules.

### # # #

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

| MOTSCHENBACHER & BLATTNER LLP | VANDEN BOS & CHAPMAN, LLP |
|---|---|
| By:/s/ Nicholas J. Henderson<br>Nicholas J. Henderson, OSB #074027<br>Of Attorneys for Debtor-in-Possession<br>Karamanos Holdings, Inc. | By: /s/ Douglas R. Ricks<br>Douglas R. Ricks, OSB #044026<br>Of Attorneys for Debtor-in-Possession<br>Sunshine Dairy Foods Management, LLC |
| Dated:  May 10, 2018 | Dated:  May 10, 2018 |

### PARTIES TO SERVE

**ECF Electronic Service:**

The foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system.

**Service via First-Class Mail:**

Sunshine Dairy Foods Management, LLC
Attn:  Norman Davidson, III
801 NE 21st Ave.
Portland, OR  97232

Karamanos Holdings, Inc.
Attn:  Norman Davidson, III
801 NE 21st Ave.
Portland, OR  97232

Page 2 of 2    ORDER AUTHORIZING EMPLOYMENT OF PROFESSIONAL
(BOVERMAN & ASSOC.)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit B - Page 2 of 2
Case 18-31644-pcm11    Doc 20    Filed 05/11/18

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re )
**Sunshine Dairy Foods Management,** ) Case No. **18-31644-pcm11**
**LLC; and Karamanos Holdings, Inc.** ) **18-31646-tmb11**
) RULE 2014 VERIFIED STATEMENT
Debtor(s) ) FOR PROPOSED PROFESSIONAL
**(Boverman & Assoc.)**

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:
   **N/A**

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**N/A**

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:
    **A retainer of $50,000.00 was paid by the Debtor on May 8, 2018.**

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)). Please list and explain the relationship between the debtor and the affiliate:

    **Karamanos Holdings, Inc. owns 94 % of membership interest in Sunshine Dairy Foods Management, LLC; and Karamanos Holdings, Inc. owns 100% of outstanding stock of Sunshine Dairy Enterprises, Inc.**

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):
    **N/A**

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:
    **Sunshine Dairy Foods Management, LLC, filed May 9, 2018, District of Oregon**
    **Karamanos Holdings, Inc., filed May 9, 2018, District of Oregon**

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

    **To Be Provided by Amendment.**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

    **To Be Provided by Amendment.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

    **To Be Provided by Amendment.**

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

    **To Be Provided by Amendment.**

I verify that the above statements are true to the extent of my present knowledge and belief.

**/s/ Daniel J. Boverman**
Applicant

1114 (11/30/09)    Page 3 of 3

Case 18-31644-pcm11    Doc 20    Filed 05/11/18

In re Sunshine Dairy Foods Management, LLC;
Chapter 11 Bankruptcy Case No. 18-31644-pcm11;

In re Karamanos Holdings, Inc.;
Chapter 11 Bankruptcy Case No. 18-31646-tmb11

CERTIFICATE - TRUE COPY

DATE: May 11, 2018

DOCUMENT: JOINT APPLICATION TO EMPLOY PROFESSIONAL (BOVERMAN & ASSOC.) and RULE 2014 VERIFIED STATEMENT FOR PROPOSED PROFESSIONAL (BOVERMAN & ASSOC.)

I hereby certify that I prepared the foregoing copy of the foregoing named document and have carefully compared the same with the original thereof and it is a correct copy therefrom and of the whole thereof.

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on:

| Sunshine Dairy Foods Management, LLC | Karamanos Holdings, Inc. |
| Attn: Norman Davidson, III | Attn: Norman Davidson, III |
| 801 NE 21st Ave. | 801 NE 21st Ave. |
| Portland, OR 97232 | Portland, OR 97232 |

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed to each of them at his or her last known address. Said envelopes were deposited in the Post Office at Portland, Oregon, on the above date, postage prepaid.

I hereby certify that the foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

Dated: May 11, 2018

VANDEN BOS & CHAPMAN, LLP

By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor-in-Possession

Page 1 – CERTIFICATE OF SERVICE

Case 18-31644-pcm11    Doc 20    Filed 05/11/18