Nicholas J. Henderson, OSB #074027
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

      Of Attorneys for Karamanos Holdings, Inc.,
      Debtor-in-Possession

Douglas R. Ricks, OSB #044026
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

      Of Attorneys for Sunshine Dairy Foods Management, LLC
      Debtors-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos. |
| Sunshine Dairy Foods Management, LLC and Karamanos Holdings, Inc., | 18-31644-pcm11 (Lead Case) 18-31646-pcm11 |
| Debtors-in-Possession. | DEBTORS' AMENDED JOINT APPLICATION FOR AUTHORITY TO EMPLOY REAL ESTATE BROKER (CBRE Group, Inc.) |

The application of Debtor-in-Possession Karamanos Holdings, Inc. ("Debtor"), respectfully

represent:

    1.     Debtor has filed a petition under Chapter 11 of the Bankruptcy Code.

Page 1 of 3    DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY
{00087320:1}    REAL ESTATE BROKER (CBRE Group, Inc.)

Case 18-31644-pcm11   Doc 259   Filed 06/21/18

2.     Debtor wishes to employ CBRE Group, Inc., Wells Fargo Center, 1300 SW Fifth Ave., Ste. 3000, Portland, OR 97201 (Phone: 503-221-1900) ("Professional") as its real estate broker in this proceeding for purposes of listing and marketing the West Plant of Debtors located at 801 NE 21st St., Portland, Oregon.

3.     Debtor has selected Professional for the reason that Professional has extensive experience in analysis and marketing of office and retail buildings, warehouses, industrial parks, apartment properties and commercial land in the Portland area and the firm is a duly licensed real estate broker in the state of Oregon.

4.     The professional services that Professional is to render include: providing brokerage and advisory services for the disposition of the Sunshine Dairy building and adjacent land parcels. As advisors, Professional will work collaboratively with Sunshine Dairy Foods Management, LLC and Karamanos Holdings, Inc. to strategically position the properties for sale and assemble materials that showcase the properties' most compelling features and opportunities. In doing so, Professional will facilitate a dynamic marketing process that will expose the listing to a broad market of potential investors and result in the most competitive pricing the market will allow. Professional's Brokers will oversee underwriting and analysis, conduct targeted marketing calls and property tours, and collect offers using a fair and confidential process, guiding negotiations to reach desired pricing. Professional will continue to be heavily involved in negotiations between Buyer and Debtors, coordinating the due diligence and closing process throughout the transaction. In addition to the services in this paragraph, services will be specifically set forth on the Listing Agreement between Debtor and Professional. The Listing Agreement is attached as **Exhibit B.**

Page 2 of 3     DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY
{00087320:1}          REAL ESTATE BROKER (CBRE Group, Inc.)

Case 18-31644-pcm11     Doc 259     Filed 06/21/18

5.      To the best of Debtor's knowledge, the Professional has no connection with the creditors or any other adverse party or its attorneys, except as disclosed in the Rule 2014 Verified Statement on file herein.

6.      To the best of Debtor's knowledge the Professional represents no interest adverse to Debtor or the estate, except as disclosed in the Rule 2014 Verified Statement on file herein.

7.      The proposed rate of compensation is commission fee of four percent (4.0%) of gross sale price plus an incentive commission of an additional 0.1% for every $250,000 increment that the gross sales price exceeds $10.0 million.  For example, if the gross sales price is $12 million CBRE's commission will be $576,000.  The commission is payable upon title being transferred to Purchaser of the listed properties.

8.      The commission may be split with other brokers who are members of MLS who make sales in the ordinary course of business.

9.      Attached as **Exhibit A** is a copy of the Professional's resume which shows the qualifications of the Professional to perform the services required to be performed on behalf of the Debtors.

WHEREFORE, Debtor prays that Debtor be authorized to employ and appoint Professional as real estate broker for Debtor in this proceeding.

MOTSCHENBACHER & BLATTNER LLP


By:/s/Nicholas J. Henderson
    Nicholas J. Henderson, OSB #074027
    Of Attorneys for Karamanos Holdings, Inc.

Page 3 of 3       DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY
{00087320:1}          REAL ESTATE BROKER (CBRE Group, Inc.)

Case 18-31644-pcm11    Doc 259    Filed 06/21/18


# Jason Green

Managing Director, Portland
Licensed in Oregon & Washington



T + 1 503 221 4810
F + 1 503 221 4873
jason.green@cbre.com

1300 SW Fifth Avenue
Suite 3000
Portland, OR 97201

## Clients Represented

- Arrow Electronics
- BV Resources
- Cambia Health Solutions
- Charles Schwab
- Chase Bank
- Credit Suisse
- Educational Opportunities for Children and Families
- ESCO
- Hewlett Packard
- Hitachi
- Iberdrola
- ID Experts
- Kalma Chemical
- Key Bank
- Killian Pacific Real Estate
- Lane Powell
- Language Solutions
- LTX Credence
- Markowitz, Herbold, Glade & Mehlhaf, P.C.
- Morgan Stanley
- Oregon Human Development Corporation
- PS Business Parks
- Raymond James Financial
- RBC Mortgage
- RedSide Development
- Shorenstein Realty
- State Farm
- Stewart Title
- Trammell Crow Company
- UBS Financial
- Western Electricity Coordinating Council
- YOH Staffing Solutions

## Professional Background

Jason Green is Managing Director for Oregon and SW Washington, where he leads 160 professionals who deliver leasing, asset services, facility management, project management and portfolio real estate services in the region. A 21-year commercial real estate veteran who has been with CBRE since 2004, Jason is an established expert in the Portland market. He is well known in the local business community and is an active participant in civic and community activities.

Jason began his career with Grubb & Ellis in 1995 after graduating from UCLA, followed by four years at Savills Studley before joining CBRE. During his 10-year stint as a top broker in the CBRE Portland office, Jason was involved in the sale or lease of over 3.4 million square feet of office space.

With a proven track record of success, active leadership experience in the business community, and a focus on client-centric solutions, Jason is a respected leader at CBRE and in the local market.

## Achievements

- Top 5 Producer for the Portland Office in 2009, 2010, 2011, 2012, 2013
- Vancouver Business Journal's "Accomplished and Under 40" award in 2011
- Earned the prestigious William H. McCarthy Award in 2011, 2012 - CBRE's highest honor for integrity, ethics and leadership
- Consistently ranked among CoStar's top "Power Brokers" in Portland

## Credentials

- Licensed Real Estate Salesperson in Oregon and Washington

## Education

- University of California, Los Angeles, Bachelor of Arts, History and Sociology

## Community & Professional Services

- United Way of the Columbia-Willamette, Board Member
- Educational Opportunities for Children & Families (EOCF), Board Member
- Westside Economic Allowance, Board Member
- CBRE African American Network Group (AANG), Executive Committee Member
- Portland State University Center for Real Estate, Advisory Board



June 20, 2018

**BY ELECTRONIC MAIL**

Daniel J. Boverman
Chief Restructuring Officer
Karamanos Holdings, Inc.
danboverman@boverman.biz

   **Re:**  *Exclusive Sales Listing Agreement*
     *915 & 801 NE 21ˢᵗ Ave., Portland, Multnomah County, Oregon, further described on Exhibit B*
     *(the "Property")*

Dear **Karamanos Holdings, Inc**:

   Thank you for selecting CBRE, Inc. ("CBRE," "we" or "us") to represent Karamanos Holdings, Inc. (referred to herein as "KHI" or "you"). The terms of our engagement are contained in this agreement ("Agreement").

1.  This Agreement shall terminate six-months after the above date ("Term").

2.  During the Term, you appoint us your exclusive agent with the right to list and market the Property for sale and to negotiate agreements for the sale of the Property (which includes portions thereof). If, during the Term, the Property is removed from the market because escrow is opened or an offer to purchase the Property is accepted, and if the sale is not consummated for any reason, other than CBRE's non-performance or negligence, then the Term will be extended by the longer of the number of days that (i) escrow was open or (ii) the Property was removed from the market, but in no event more than 180 calendar days in the aggregate. If this Agreement should expire while under contract with a prospective Buyer, KHI & CBRE mutually agree to amend this Agreement by extending the expiration date to the earlier of the Closing Date or Buyer's termination of Escrow.

3.  We will commit the appropriate number of qualified and licensed professionals to this engagement. Your "Listing Team" is comprised of Charles Safley, Josh McDonald, Joe Nydahl and Phil Oester. We will have the right to change members of the Listing Team as necessary and appropriate. The Listing Team shall owe you duties of trust, confidence and loyalty.

4.  We will offer the Property unpriced. However, it is your right to: (a) approve, modify, reject or disapprove any and all proposals and offers as well as any prospective purchasers for the Property and (b) adjust the terms and conditions of any offer made, including but not limited to, adjusting the Property's listing price.

5.  We will work with you to create and implement a sales strategy for the Property, including preparation of appropriate and customary marketing materials (such as an offering brochure). In developing the strategy, we will rely on (without requirement to verify) any information provided to us by you, your agents, affiliates and/or any of the Property's managers. However, we will not issue any written marketing materials without your prior written approval.

{00086357:4}

DocuSign Envelope ID: 2B6CDEF7-A5A8-45D3-A05A-0D45D14B07B8

6.  The success of this engagement relies, in part, on cooperation and communication between us. Therefore, you agree to: (i) provide us with all available information to assist us in marketing the Property; (ii) immediately refer to us all purchase inquiries for the Property; and (iii) conduct all negotiations with prospective purchasers exclusively through us.

7.  You represent that you either are the fee owner of or otherwise have control over the Property. You further represent that, subject to Bankruptcy Court approval, you have full authority to enter into this Agreement without violating anyone else's rights, or any other agreements or contractual obligations.

8.  We will present all offers to you and assist you in developing and negotiating counteroffers until a purchase and sale agreement ("PSA") is signed and all contingencies are satisfied or waived. You agree that you and/or your legal counsel are solely responsible for determining the legal sufficiency of the documents related to this engagement and the tax consequences of any transaction. You are also responsible for evaluating any offers and determining with whom you will negotiate or enter into a transaction. While we may assist you in gathering reasonably available information, we cannot represent or warrant the creditworthiness of any prospect and/or their ability to satisfy their obligations under a PSA. All final business and legal decisions shall be made solely by you. Notwithstanding any designation of us as "agent" in this Agreement, we will have no right, power, or authority to enter into any agreement with any prospective purchaser, real estate broker, or any other person in the name of, on behalf of, or otherwise binding upon you.

9.  We will earn (and you agree to pay) a commission in accordance with this Agreement and the attached Commission Schedule (Exhibit "A") if either of the following occur:

    (a) during the Term, you sell the Property to a purchaser, whether procured by us, you or anyone else; or

    (b) within one hundred twenty (120) days after the expiration of the Term or after the Agreement otherwise terminates (the "Post-Term"), the Property is sold to, or negotiations continue, resume or commence and thereafter continue leading to a sale of the Property to any person or entity (including his/her/its successors, assigns or affiliates) with whom, during the Term, CBRE either negotiated (either directly or through another broker or agent) or to whom the Property was submitted during the Term ("Existing Prospect"). We will submit to you a list of such Existing Prospects no later than fifteen (5) business days following the expiration or termination of the Term; provided, however, that if a written offer has been submitted prior to said expiration or termination date, then it shall not be necessary to include the offeror's name on the list.

10. You agree that we are authorized to cooperate with and, if appropriate, share our commission with "Cooperating Brokers" (such as a broker representing a purchaser). We will be responsible for paying the fee or commission due to the Cooperating Broker (if any) provided the Cooperating Broker: (i) represents the prospective purchaser pursuant to a written agreement, a copy of which is furnished to us prior to the execution of the transaction; (ii) is properly licensed; and (iii) executes and delivers to us an acceptable cooperating brokerage agreement. Market conditions may exist whereby the Cooperating Broker receives an above-standard fee and/or broker bonus. If so, our commission shall be increased by (and you agree to pay) an amount such that we receive no less than 50% of the total fee in accordance with the Commission Schedule. In addition, to encourage us to engage and incent Cooperating Brokers you agree that in the event a Cooperating Broker is entitled to a share our commission that you will pay the cooperating broker an additional 0.5% commission in which CBRE shall not have any share.

11. Intentionally Removed.

DocuSign Envelope ID: 2B6CDEF7-A5A8-45D3-A05A-0D45D14B07B8

12. The Listing Team are your designated agents to the exclusion of all of CBRE's other licensees. All other CBRE licensees shall be referred to as "Non-Listing Team Agents" and shall be considered Cooperating Brokers.

13. Questions regarding environmental and zoning issues may arise during the course of our representation. CBRE is not obligated to perform, and has not made any investigation of the physical conditions or zoning issues relating to the Property. You agree to disclose to us and allow us to disclose to prospective purchasers everything you know (after reasonable inquiry by you) regarding present and future property issues including, but not limited to, structural, mechanical, hazardous materials, zoning and environmental matters affecting the Property and/or the Property's condition.

14. If the Property becomes the subject of foreclosure proceedings before the expiration of the Term, then in our sole and absolute discretion we may: (a) suspend this Agreement until we may elect to reinstate it or (b) terminate this Agreement and enter into a listing agreement with any receiver, party initiating foreclosure, party purchasing the Property at a foreclosure sale, or any other third party.

15. While we are confident that our relationship will be mutually satisfactory, if there is a dispute between us, then we agree to resolve it subject to the following:

    (a) if either party institutes a legal proceeding against the other party relating to this Agreement, the prevailing party shall recover from the non-prevailing party all of its (i) reasonable attorneys' fees and costs, (ii) expert-related fees and costs and (iii) other related expenses. All past due amounts shall bear interest at twelve percent (12%) per annum or the maximum rate permitted in the state in which the Property is located. No party will be entitled to punitive, special and/or consequential damages, and we each waive all rights to and claims for relief other than for compensatory damages; and

    (b) Disputes regarding this Agreement must be resolved in the United States Bankruptcy Court for the District of Oregon, in conformity with federal bankruptcy law, for so long as Karamanos Holdings, Inc.'s bankruptcy case remains open or the court retains jurisdiction over Karamanos Holdings, Inc, or the Property. If the bankruptcy case is closed and the Bankruptcy Court does not retain jurisdiction, disputes shall be resolved in any court of competent jurisdiction located in the County of Multnomah, State of Oregon, according to the laws of the State of Oregon (without regard to any choice of law provisions thereof).

16. You and CBRE agree to comply with all applicable laws, regulations, codes, ordinances and administrative orders. Further, we both acknowledge that: (a) it is illegal to refuse to display or lease or sell to or from any person because of one's membership in a protected class, *e.g.*: race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental handicap, familial status or any other class protected by applicable law and (b) the Property will be offered in compliance with all applicable anti-discrimination laws.

17. This Agreement is our entire agreement and supersedes all prior understandings between us regarding this engagement and is governed by the laws of the state where the Property is located, without regard to its conflict of laws principles. This Agreement will be binding and inure to the benefit of our lawful representatives, heirs, successors, designees and assignees. It may not be altered or terminated except in a writing signed by both you and CBRE. Neither party's failure to exercise any of its rights under this Agreement will relieve the other party of its obligations hereunder. Nothing herein is or may be deemed a waiver or full statement of any of our rights or remedies, whether at law or in equity, all of which are expressly reserved. If any provision of this Agreement is unenforceable or void under applicable law, the remaining provisions will continue to be binding. This Agreement and the rights, interests or obligations created hereunder will not be assigned by either of the parties without the prior written consent of the other party. We each agree that we have both participated in the negotiation and drafting of this Agreement. You acknowledge

DocuSign Envelope ID: 2B6CDEF7-A5A8-45D3-A05A-0D45D14B07B8

that the person signing this Agreement on your behalf has your full authority to execute it. This Agreement will be binding whether signatures are exchanged electronically or by hand, by mail, by fax, by electronic transfer or image, by photocopy or in counterparts.

Thank you again for this opportunity. We look forward to working with you.

Very truly yours,

**CBRE, Inc.**
**Licensed Real Estate Broker**

By: _Jason Green_

Name: Jason Green

Title: Managing Director

**AGREED:**

**Company: Karamanos Holdings, Inc.**

By: _____

Name: NORMAN DAVIDSON III

Title: PRESIDENT

Page 4
{00086357:4}

EXHIBIT B
Case 18-31644-pcm11   Doc 259   Filed 06/21/18

## EXHIBIT A – Commission Schedule

A.    *Sale.* As to sales of real property, CBRE's commission shall be four percent (4.0%) of gross sale price plus an additional 0.1% for every $250,000 increment that the gross sales price exceeds $10.0 million. For example, if the gross sales price is $12 million CBRE's commission will be $576,000. The commission shall be earned and paid on the date title to the Property is transferred to the purchaser; provided, however, that if the transaction involves an installment contract, then payment shall be made upon execution of such contract.

B.    *Other Transfer.* Notwithstanding any other provision in this Agreement, KHI may terminate this Agreement, without cause, if it contributes or conveys the Property or any interest therein, including a controlling interest in KHI, to a corporation, joint venture, partnership, or other business entity, or if KHI and/or its subsidiaries are otherwise recapitalized with invested capital and financing in lieu of selling the Property. In the event of such termination, KHI shall reimburse CBRE for any and all marketing and advertising costs, and out of pocket expenses. CBRE shall also be entitled to a reasonable sum for services rendered.

1.    *Definitions.* Under this Agreement the terms "sell," "sale" or "sold" shall mean: (a) an exchange of the Property; or (b) the granting of an option to purchase the Property

2.    *Option to Purchase.* If you grant an option to purchase the Property, you agree to pay us a commission in accordance with this Commission Schedule, on the price paid for the option and for any extensions when you receive payment for any such option and/or extensions. If the option is exercised, whether during the Term or after, we will earn a further commission in accordance with this Agreement. Notwithstanding the foregoing, to the extent that all or part of the price paid for the option or any extension thereof is applied to the sales price of the Property, then any commission previously paid by you to us on account of the option payments will be credited against the commission payable to us on account of the exercise of the option.

{00086357:4}

**EXHIBIT B – Property Description**

{00086357:4}

DocuSign Envelope ID: E6B472DC-40C4-4013-8F18-BD85C139A121

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                       )

**Sunshine Dairy Foods Management,** )      **18-31644-pcm11 (Lead Case)**
**LLC; and**                      ) Case No. _____ **18-31646-pcm11**

**Karamanos Holdings, Inc.**      )
Debtor(s)                ) RULE 2014 VERIFIED STATEMENT
                          ) FOR PROPOSED PROFESSIONAL

**(Real Estate Broker - CBRE Group, Inc.)**

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1.  The applicant is not a creditor of the debtor except:

**N/A**

2.  The applicant is not an equity security holder of the debtor.

3.  The applicant is not a relative of the individual debtor.

4.  The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5.  The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6.  The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7.  The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8.  The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9.  The applicant is not a person in control of the debtor.

10.  The applicant is not a relative of a director, officer or person in control of the debtor.

11.  The applicant is not the managing agent of the debtor.

12.  The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13.  The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**None.**

1114 (11/30/09)    Page 1 of 3

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:

**N/A**

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)). Please list and explain the relationship between the debtor and the affiliate:

**Debtor is the managing member of Sunshine Dairy Foods Management, LLC; Debtor owns 94% of the outstanding membership interest of Sunshine Dairy Foods Management, LLC; Debtor owns 100% of the outstanding stock of Sunshine Dairy Enterprises, Inc.**

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

**N/A**

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:
**Sunshine Dairy Foods Management, LLC; filed May 9, 2018, District of Oregon**

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

**Debtor has guaranteed the following debts of Sunshine Dairy Foods Management, LLC ("Sunshine"): Wells Fargo Equipment Finance (unconditional guarantee of equipment lease; dated 3/31/15; no security given); Strada Capital Corporation (unconditional guarantee of equipment lease; dated 10/20/17; security interest described below).**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

**See attached Continuation Statement No. 22.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

**See attached Continuation Statement No. 23.**

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

**None.**

**--------------------------------------------------------------------------------------------------**

**No one at CBRE Group, Inc. has knowledge as to Statement Nos. 16 and 20 - 24.**

I verify that the above statements are true to the extent of my present knowledge and belief.

**/s/ Jason Green**

DocuSigned by:

F99B4C77E397486...

Applicant

1114 (11/30/09)    Page 3 of 3

<u>In re  Sunshine Dairy Foods Management, LLC;</u>
Ch 11 Bankruptcy Case No. 18-31644-pcm11
<u>In re Karamanos Holdings, Inc.;</u>
Ch 11 Bankruptcy Case No. 18-31646-pcm11

**Continuation Statement No. 22**:

    1. Sunshine ($489,332.29 Loan) - Obligation stems from a 5/4/11 unsecured loan for $400,000 and a 1/22/13 unsecured loan for $89,332.29, which were consolidated for repayment on 9/23/15.  A total of 16 monthly installments of $10,311.41 (a total of $164,982.56) were paid to the Debtor by Sunshine in the last 18 months.  Current balance on this loan after the last payment made on 3/23/18 is $195,005.39.

    2. Sunshine ($100,000 Loan) - Obligation stems from a 6/1/15 unsecured loan.  A total of $34,813.89 was paid to the Debtor by Sunshine in the last 18 months, the final payment of which paid off the loan in June 2017.

    3. Sunshine (Equipment Lease) – Obligation stems from a 5/1/07 lease that was further amended on 5/9/08, 1/1/11, and 1/1/12 and relates to the lease of equipment for Sunshine's operations with a stated cost value of $9,731,942.00.  Lease payments, under the most recent amendment, are $26,961.17 per month.  All pre-petition lease payments have been deferred.

    4. Sunshine (Commercial Lease) – Obligation stems from a 5/1/07 lease that relates to the lease of real property and improvements for Sunshine's operations located at 801 NE 21st Ave., Portland, OR; 915 NE 21st Ave., Portland, OR; 925 NE 25th Ave., Portland, OR; and 8440 NE Halsey St., Portland, OR.  Base rent payments as of the date of the petition are $40,373.49 with additional rent payments for taxes, insurance, and utilities.  Sunshine paid $200,000 to Debtor on May 8, 2018 on account of such lease; all outstanding pre-petition lease payments have been deferred.

In re  Sunshine Dairy Foods Management, LLC;
Ch 11 Bankruptcy Case No. 18-31644-pcm11
In re Karamanos Holdings, Inc.;
Ch 11 Bankruptcy Case No. 18-31646-pcm11

**Continuation Statement No. 23**:

1.      First Business Capital Corporation: Co-debtor on note and line of credit with Sunshine; collateral pledged is all assets wherever located of the debtor (reciprocal pledge by Sunshine); UCC-1 filed on 10/18/17; current balance of $9,027,482.

2.      Strada Capital Corporation/LCA Bank Corporation: Listed as co-debtor with Sunshine on UCC-1; collateral pledged is all equipment and other personal property, including but not limited to furniture, fixtures and equipment subject to that certain Agreement Number 10-015884 / 196297 dated 10/02/2017 between Secured Party as Lessor/Creditor and Sunshine as Lessee/Debtor, and subject to any and all existing and future schedules entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appertaining or attached to any of the equipment, and all substitutions, trade-ins, renewals and replacements of and improvements and accessions to the Equipment. (1) A+F packer format change from 80mm cups to 95mm Phoenix, 5.3oz Greek cup, pack pattern 3x4 and modify to run carton from International Paper as per sample at production speed of up to 240 cpm. (identical pledge by debtor and Sunshine); UCC-1 filed on 10/30/17; 48 month lease (43 remaining) with monthly payments of $2,569.67

3.      Access Business Finance, LLC: Co-debtor on note with Sunshine; collateral pledged is all present and future assets of the debtor (reciprocal pledge by Sunshine); UCC-1 filed on 10/24/13; Security interest terminated on 2/6/18 (loan paid with proceeds from First Business Capital Corporation loan)

In re Sunshine Dairy Foods Management, LLC
Ch 11 Bankruptcy Case No. 18-31646-pcm11
In re Karamanos Holdings, Inc.;
Chapter 11 Bankruptcy Case No. 18-31646-pcm11

CERTIFICATE - TRUE COPY

DATE:             June 18, 2018

DOCUMENT:    DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY REAL
                      ESTATE BROKER (CBRE Group, Inc.) and RULE 2014 VERIFIED
                      STATEMENT FOR PROPOSED PROFESSIONAL (Real Estate Broker –
                      CBRE GROUP, INC.

     I hereby certify that I prepared the foregoing copy of the foregoing named document and have carefully compared the same with the original thereof and it is a correct copy therefrom and of the whole thereof.

CERTIFICATE OF SERVICE

     I hereby certify that I served a copy of the foregoing on:

| | | |
|---|---|---|
| Sunshine Dairy Foods<br>  Management, LLC<br>Attn: Norman Davidson, III<br>801 NE 21st Ave.<br>Portland, OR 97232 | Valley Falls Farm, LLC<br>c/o Bryan P. Coluccio, V.P. and<br>General Counsel Keystone-Pacific, LLC<br>18555 SW Teton Avenue<br>Tualatin, OR 97062<br>(Un. Sec. Cred. Comm. Chairperson) | Sorrento Lactalis, Inc.<br>c/o Phillips Lytle LLP<br>Attn: Angela Z. Miller<br>125 Main Street<br>Buffalo, NY 14203 |
| Karamanos Holdings, Inc.<br>Attn: Norman Davidson, III<br>801 NE 21st Ave.<br>Portland, OR 97232 | Scott Laboratories Inc.<br>Attn: Jill Skoff, Accting Assistant<br>PO Box 4559<br>Petaluma, CA 94955 | |

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed to each of them at his or her last known address. Said envelopes were deposited in the Post Office at Portland, Oregon, on the above date, postage prepaid.

     I hereby certify that the foregoing document was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

     Dated: June 18, 2018

                 MOTSCHENBACHER & BLATTNER, LLP

                 By:/s/Nicholas J. Henderson
                   Nicholas J. Henderson, OSB #074027
                   Of Attorneys for Karamanos Holdings, Inc.

In re  Sunshine Dairy Foods Management, LLC
Ch 11 Bankruptcy Case No. 18-31646-pcm11
In re Karamanos Holdings, Inc.;
Chapter 11 Bankruptcy Case No. 18-31646-pcm11

CERTIFICATE - TRUE COPY

DATE:          June 21, 2018

DOCUMENT:     AMENDED DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY
              REAL ESTATE BROKER (CBRE Group, Inc.) and RULE 2014 VERIFIED
              STATEMENT FOR PROPOSED PROFESSIONAL (Real Estate Broker –
              CBRE GROUP, INC.)

   I hereby certify that I prepared the foregoing copy of the foregoing named document and
have carefully compared the same with the original thereof and it is a correct copy therefrom and
of the whole thereof.

CERTIFICATE OF SERVICE

   I hereby certify that I served a copy of the foregoing on:

| | | |
|---|---|---|
| Sunshine Dairy Foods<br> Management, LLC<br>Attn:  Norman Davidson, III<br>801 NE 21st Ave.<br>Portland, OR  97232 | Valley Falls Farm, LLC<br>c/o Bryan P. Coluccio, V.P. and<br>General Counsel Keystone-Pacific, LLC<br>18555 SW Teton Avenue<br>Tualatin, OR 97062<br>(Un. Sec. Cred. Comm. Chairperson) | Sorrento Lactalis, Inc.<br>c/o Phillips Lytle LLP<br>Attn: Angela Z. Miller<br>125 Main Street<br>Buffalo, NY 14203 |
| Karamanos Holdings, Inc.<br>Attn:  Norman Davidson, III<br>801 NE 21st Ave.<br>Portland, OR  97232 | Scott Laboratories Inc.<br>Attn:  Jill Skoff, Accting Assistant<br>PO Box 4559<br>Petaluma, CA  94955 | |

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed
to each of them at his or her last known address.  Said envelopes were deposited in the Post
Office at Portland, Oregon, on the above date, postage prepaid.

   I hereby certify that the foregoing document was served on all CM/ECF participants
through the Court's Case Management/Electronic Case File system on the date set forth below.

   Dated:  June 21, 2018

        MOTSCHENBACHER & BLATTNER, LLP

        By:/s/Nicholas J. Henderson
         Nicholas J. Henderson, OSB #074027
         Of Attorneys for Karamanos Holdings, Inc.