# VANDEN BOS & CHAPMAN, LLP
## ATTORNEYS AT LAW

ROBERT J VANDEN BOS
ANN K. CHAPMAN
DOUGLAS R. RICKS*
CHRISTOPHER N. COYLE*

SUITE 520, THE SPAULDING BUILDING
319 SW WASHINGTON STREET
PORTLAND, OREGON 97204-2690
Website: vbcattorneys.com

TELEPHONE
(503) 241-4869

FAX
(503) 241-3731

Sender's Email:
Doug@vbcattorneys.com

*Also Admitted in Washington

August 21, 2018

Honorable Peter C. McKittrick
U.S. Bankruptcy Judge
U.S. Bankruptcy Court
1001 SW Fifth Avenue, Ste. 700
Portland, OR 97204

       In re Sunshine Dairy Foods Management, LLC
       Ch 11 Bankruptcy Case No. 18-31644-pcm11(Lead Case)
       In re Karamanos Holdings, Inc.;
       Ch 11 Bankruptcy Case No. 18-31646-pcm11
       Our File No. 9430

**Bidding Procedures Proposed Order**

Dear Judge McKittrick:

    Attached for your review is the proposed Order Approving Bidding Procedures, Overbid Protection and Break-up Fee and Form and Manner of Notice of Bidding Procedures ("Order") regarding Debtors' Motion for Order Approving Bidding Procedures, Overbid Protection and Break-Up Fee and Form and Manner of Notice of Bidding Procedures ("Motion") [Doc No. 377] set for hearing before you on August 24, 2018.

    The proposed order does not resolve the U.S. Trustee's objection filed today.

                     Sincerely,

                     VANDEN BOS & CHAPMAN, LLP

                     /s/Douglas R. Ricks
                     Douglas R. Ricks

DRR:sc
Enc.

cc:  Sunshine Dairy Foods Management, LLC
     Valley Falls Farm, LLC
     c/o Bryan P. Coluccio, V.P. – via 1st Class Mail
     Scott Laboratories Inc.
     Attn: Jill Skoff, Accting Assistant – via 1st Class Mail
     Sorrento Lactalis, Inc.
     c/o Phillips Lytle LLP – via 1st Class Mail
     U.S. Trustee via CM/ECF

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos. |
| Sunshine Dairy Foods Management, LLC | 18-31644-pcm11 (Lead Case) |
| and | 18-31646-pcm11 |
| Karamanos Holdings, Inc.<br><br>　　　　Debtors-in-Possession. | ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES |

This matter is before the Court on the Motion for Order Approving Bidding Procedures, Overbid Protection and Break-Up Fee and Form and Manner of Notice of Bidding Procedures ("Motion") [Doc No. 377] filed by Sunshine Dairy Foods Management, LLC and Karamanos Holdings, Inc. collectively ("Debtors"). The Court having held a hearing on the Motion on August 24, 2018, and having considered the submissions and arguments of counsel and the files and records herein, and being now fully advised of the premises,

Page 1 of 7　　ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

THE COURT FINDS as follows:

A. This Court has core jurisdiction over Debtors' chapter 11 cases ("Bankruptcy Cases"), this Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The notice provided regarding the Motion and the hearing on the Motion and the bidding procedures described therein and attached hereto as **Exhibit A** ("Bid Procedures") constitutes sufficient and adequate notice. No other or further notice in connection with the entry of this Order is or shall be required.

C. The Bid Procedures were proposed by Debtors in good faith with the goal of maximizing the value of Debtors' business and the Acquired Assets (defined below) for the benefit of all creditors of the estates and other parties in interest. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bid Procedures attached hereto as **Exhibit A**, which are reasonable and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Acquired Assets.

D. The Bid Procedures (including the Break-Up Fee and Expense Reimbursement as defined in the APA) are fair and reasonable. The Bid Procedures represent an exercise of Debtors' sound business judgment and will facilitate an orderly sale process, and are in the best interests of the estates.

E. On or about August 10, 2018, the Debtors entered into an Asset Purchase Agreement ("APA") with Lyrical Foods, Inc. ("Purchaser") providing for the sale of Debtors' assets related to the East Plant facility as a going concern. The APA is attached as Exhibit 1

Page 2 of 7   ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

to the Motion. The assets to be sold include real property, equipment, supplies, records, transferable licenses and permits, insurance proceeds from claims, goodwill and general intangibles, and all other assets associated with the East Plant facility, certain assumed contracts and other assets used or useful in Debtors' business as more specifically described and defined in the APA ("Acquired Assets").

F. Entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Motion is granted as set forth in this Order. The Bid Procedures attached as **Exhibit A** are hereby approved and shall be used in connection with the proposed sale of the Acquired Assets.

2. All responses or objections to the relief requested in the Motion concerning the Bid Procedures and the Notice Procedures that have not been withdrawn, waived, settled or resolved at the August 24, 2018 hearing are overruled.

3. Debtors shall file a motion seeking approval of a sale of the Acquired Assets to Purchaser or a Successful Bidder other than Purchaser, resulting from the process described in the Bid Procedures, free and clear of liens, claims, interests, and encumbrances, no later than August 23, 2018 (the "Sale Motion"). Any objections to the proposed sale shall be filed no later than **September 11, 2018 ("Objection Deadline")**. Objections must be in writing, be filed with this Court and served on the following parties: (a) Sunshine Dairy Foods Management, LLC, Attn: Norman Davidson, III, 801 NE 21st Ave., Portland, OR 97232; (b) Douglas R. Ricks, Vanden Bos & Chapman, LLP, 319 SW Washington, Ste 520, Portland, OR 97204, counsel for Debtor Sunshine Dairy Foods

Page 3 of 7    ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

Management, LLC; (c) Karamanos Holdings, Inc., Attn: Norman Davidson, III, 801 NE 21st Ave., Portland, OR 97232; (d) Nicholas J. Henderson, Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, counsel for Debtor Karamanos Holdings, Inc.; and (e) the Office of the United States Trustee for the District of Oregon, 620 SW Main Street, Suite 213, Portland OR 97205, Attn: Carla McClurg, Esq. ("Notice Parties"). Any party filing an objection to the Sale Motion must attend the hearing on the Sale Motion (the "Sale Approval Hearing") and advocate its objection at such hearing. Any objection not filed, served, and/or advocated in accordance with this paragraph shall be deemed waived and shall be forever barred.

4. Any Auction (as defined in the Motion) for the Acquired Assets will be held on **September 13, 2018, at 10:00 a.m. Pacific Time**, at the offices of Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204.

5. The Sale Approval Hearing will be conducted on **September 17, 2018, at 9:00 a.m. Pacific Time**, in United States Bankruptcy Court for the District of Oregon, at: Congress Center, 1001 SW 5th Ave #700, Courtroom # 1, Portland, OR 97204, at which time Debtors will present for approval by this Court the Successful Bid (as defined in the Bid Procedures) (if there is an Auction) or the APA with the Purchaser (if there is not an Auction), pursuant to the provisions of Sections 105, 363(b), 363(f), 363(m), 365 and 1146(a) of the Bankruptcy Code. Debtors shall be deemed to have accepted a bid only when the bid for the Acquired Assets has been approved by the Court at the Sale Approval Hearing

6. The Break-Up Fee and Expense Reimbursement presented in the Motion and contained and defined in the APA are hereby approved, effective immediately, and shall be payable as set forth in the APA, including, if applicable, as first priority administrative

Page 4 of 7  ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

expense claims in the Bankruptcy Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, prior to the payment of the proceeds of such sale to any third party asserting a lien on the Acquired Assets, and shall be free and clear of any such lien.

7. Debtors shall file a motion regarding the assumption and assignment of any unexpired contracts and unexpired leases that are a part of the APA (the "Assumption Motion") no later than August 24, 2018.

8. Any objections to the Assumption Motion shall be filed no later than **September 11, 2018**. Objections must be in writing, be filed with this Court and served on the following parties: (a) Sunshine Dairy Foods Management, LLC, Attn: Norman Davidson, III, 801 NE 21st Ave., Portland, OR 97232; (b) Douglas R. Ricks, Vanden Bos & Chapman, LLP, 319 SW Washington, Ste 520, Portland, OR 97204, counsel for Debtor Sunshine Dairy Foods Management, LLC; (c) Karamanos Holdings, Inc., Attn: Norman Davidson, III, 801 NE 21st Ave., Portland, OR 97232; (d) Nicholas J. Henderson, Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, counsel for Debtor Karamanos Holdings, Inc.; and (e) the Office of the United States Trustee for the District of Oregon, 620 SW Main Street, Suite 213, Portland OR 97205, Attn: Carla McClurg, Esq. ("Notice Parties"). Any party filing an objection to the Assumption Motion must attend the Sale Approval hearing or any adjourned date thereof and advocate its objection at such hearing. Any objection not filed, served, and/or advocated in accordance with this paragraph shall be deemed waived and shall be forever barred.

9. If a timely objection is received to the assumption and assignment of any unexpired contract and unexpired lease and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at the Sale Approval Hearing, or any adjourned date thereof. Except as otherwise provided in the APA, the pendency of a

Page 5 of 7     ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

dispute relating to a proposed cure amount will not delay the closing of the Sale, including the assumption and assignment of agreements necessary to effectuate such closing, provided that, for any dispute relating to a proposed cure amount that is unresolved by the date of a closing on the sale, the Debtors shall escrow the cure amount proposed with respect to such unresolved objection pending such resolution and the Purchaser or Successful Bidder other than the Purchaser shall have no liability for any such amounts or other amounts or claims under the contract relating to the period prior to the sale.

10. The failure of any third party to file and serve an objection as ordered and directed herein shall be deemed the consent of such a party to the granting of the Sale Motion and the Assumption Motion and the sale and transfer of the Acquired Assets to Purchaser or the Successful Purchaser (including the assumption and assignment of Executory Contracts and the fixing of the applicable cure costs).

11. All bidders are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to this Motion, the Sale Motion, and the Assumption Motion.

12. This Court retains jurisdiction with respect to all matters arising from or related to implementation of this Order.

13. As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for 14 days after the entry thereof and shall be effective and enforceable immediately on its entry on the docket.

14. Unless otherwise specified, all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

###

/ / /

/ / /

Page 6 of 7   ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

PRESENTED BY:

| VANDEN BOS & CHAPMAN, LLP | MOTSCHENBACHER & BLATTNER LLP |
|---|---|
| By:/s/Douglas R. Ricks<br>   Douglas R. Ricks, OSB #044026<br>   Of Attorneys for Debtor-in-Possession<br>   Sunshine Dairy Foods Management, LLC | By:/s/Nicholas J. Henderson<br>   Nicholas J. Henderson, OSB #074027<br>   Of Attorneys for Debtor-in-Possession<br>   Karamanos Holdings, Inc. |

**First Class Mail:**

Sunshine Dairy Foods Management, LLC
Attn: Norman Davidson, III
801 NE 21st Ave.
Portland, OR 97232

Karamanos Holdings, Inc.
Attn: Norman Davidson, III
801 NE 21st Ave.
Portland, OR 97232

Valley Falls Farm, LLC
c/o Bryan P. Coluccio, V.P. and
General Counsel Keystone-Pacific, LLC
18555 SW Teton Avenue
Tualatin, OR 97062
(Un. Sec. Cred. Comm. Chairperson)

Scott Laboratories Inc.
Attn: Jill Skoff, Accting Assistant
PO Box 4559
Petaluma, CA 94955

Sorrento Lactalis, Inc.
c/o Phillips Lytle LLP
Attn: Angela Z. Miller
125 Main Street
Buffalo, NY 14203

**Electronic Mail:**

The foregoing was served on all CM/ECF participants through the Court's Case Management/ Electronic Case File system.

Page 7 of 7    ORDER APPROVING BIDDING PROCEDURES, OVERBID PROTECTION AND BREAK-UP FEE AND FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 402    Filed 08/21/18

| In re | Bankruptcy Case Nos. |
|---|---|
| Sunshine Dairy Foods Management, LLC, and | 18-31644-pcm11 (Lead Case) |
| Karamanos Holdings, Inc. | 18-31646-pcm11 |
| Debtors-in-Possession. | |

# BIDDING PROCEDURES

These bidding procedures (the "<u>Bidding Procedures</u>") have been approved by an order of the United States Bankruptcy Court for the District of Oregon (the "<u>Bankruptcy Court</u>") entered on August [*], 2018 [Docket No. *] (the "<u>Bidding Procedures Order</u>") in the above-captioned jointly administered Chapter 11 cases (the "<u>Chapter 11 Cases</u>") of Sunshine Dairy Foods Management, LLC ("<u>Sunshine</u>") and Karamanos Holdings, Inc. ("<u>KHI</u>") (collectively, the "<u>Debtors</u>").

1.  These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a bidding process and auction (the "<u>Auction</u>") for the sale the ("<u>Sale</u>") of certain assets (the "<u>Acquired Assets</u>") on the terms substantially set forth in the Asset Purchase Agreement, dated as of August 10, 2018 and attached as Exhibit 1 to Debtors' Joint Motion for Approval of Bidding Procedures, Overbid Protection and Break-up Fee and Form and Manner of Notice of Bidding Procedures (the "<u>APA</u>"), by and among the Debtors and Lyrical Foods, Inc. (the "<u>Stalking Horse Bidder</u>"). The Acquired Assets consist of the assets described in **Exhibit A** attached hereto.

The Sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the APA, as the same may be amended pursuant to the terms hereof, subject to the receipt of higher and otherwise better bids in accordance with these Bidding Procedures. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the APA.

> **Copies of the Bidding Procedures Order, the APA, and other documents related thereto are available upon request to Sunshine's counsel, by telephone at (503) 241-4869, or by e-mail at sara@vbcattorneys.com**

A.  **Approval of Stalking Horse Bid Protections.**

The Bidding Procedures Order approved, among other things, (i) a fee of $150,000 (the "<u>Break Up Fee</u>"); and (ii) reimbursement of expenses for up to $75,000 in documented, out of pocket expenses (the "<u>Expense Reimbursement</u>", and together with the Break Up Fee, the "<u>Bid Protections</u>") which are payable to the Stalking Horse Bidder in the event the Bankruptcy Court approves the Sale of the Acquired Assets to any other person or entity other than the Stalking Horse Bidder.

**EXHIBIT A – Page 1 of 9**

**B.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid (a "Potential Bidder") must, on or before September 6, 2018 at 5:00 p.m. (Pacific Time) (the "Bid Deadline") deliver (unless previously delivered) the following documents along with an offer for the Acquired Assets in accordance with Section D below (the "Bid Documents"):

   a.   an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non- solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder and the Debtors (the "Confidentiality Agreement"); and

   b.   preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which must be satisfactory to the Debtors.

The Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| **Debtors** | **Counsel for Sunshine** |
|---|---|
| Sunshine Dairy Foods Management, LLC<br>Karamanos Holdings, Inc.<br>Attn: Norman Davidson, III<br>801 NE 21st Ave.<br>Portland, OR 97232 | Douglas R. Ricks<br>Vanden Bos & Chapman LLP<br>319 SW Washington #520<br>Portland OR 97204 |
| **Counsel for Karamanos** | **Debtor Contact** |
| Nicholas J. Henderson,<br>Motschenbacher & Blattner LLP<br>117 SW Taylor St., Suite 300<br>Portland, OR 97204 | Sunshine Dairy Foods Management, LLC<br>c/o Daniel J. Boverman, CTP, Chief Restructuring Officer<br>Boverman & Associates, LLC<br>11285 SW Walker Rd<br>Portland, OR 9725 |

Within forty-eight (48) hours after a Potential Bidder delivers the Bid Documents, the Debtors shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Acquired Assets. Only those Potential Bidders that have submitted acceptable Bid Documents (each, an "Acceptable Bidder") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**C.    Access to Due Diligence.**

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non- public information. The Debtors shall provide to each Acceptable Bidder

reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors provide any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not, except with respect to the Acquired Assets, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the APA. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated Daniel J. Boverman to coordinate all reasonable requests for additional information and due diligence access.

### D. Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must, by the Bid Deadline, deliver to (i) the Debtors, (ii) their counsel and (iii) the Debtor Contact, which shall be shared with the Stalking Horse Bidder within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtors to satisfy each of the following conditions:

    a. **Bidder Identity and Authorization.** Each Bid must fully disclose the identity of each entity that will be participating in such bid and the name of any affiliates, insiders, or former insiders of the Debtors that participated in submitting the bid, including any proposed designee(s). Further, each Bid must provide written evidence that the Acceptable Bidder has obtained authorization and approval from its board of directors (or comparable

governing body) with respect to the submission of its bid and execution and delivery of the necessary transaction documents, or a representation that no such authorization and approval is required.

b. **Bid Deposit.** Each Bid (other than the Stalking Horse Bid) must be accompanied by a cash deposit the greater of $607,500 or 10% of the proposed gross purchase price (the "Good Faith Deposit"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account;

c. **Minimum Bid Amount.** The minimum opening bid from any Acceptable Bidder must (a) include a cash purchase price that is at least $475,000 (*i.e.*, the sum of the Bid Protections and the minimum bid increment of $250,000) greater than the cash purchase price set forth in the APA, and (b) must include total consideration, including all cash, non-cash consideration and assumed liabilities, that is at least $475,000 greater than in the APA;

d. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide offer to purchase the Acquired Assets;

e. **Same or Better Terms/Identification of Assumed Contracts**. Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' contracts the Acceptable Bidder seeks to have assigned, which must include all contracts to be assumed and assigned to the Stalking Horse Bidder pursuant to the APA), along with a copy of the APA that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to the Debtors than the APA or inconsistent with these Bidding Procedures;

f. **Alternative Transactions**. Debtors may consider a bid proposing a transaction other than a sale as set forth on Exhibit 1 so long as such bid (i) proposes a transaction that would close substantially in the same time frame as the Initial Bid; and (ii) is not subject to or conditioned upon any financing contingencies or the outcome of due diligence. Debtors reserve the right to aggregate separate bids in determining whether one or more of a combination of bids, in the aggregate, constitute a higher or otherwise better offer;

g. **No Contingencies.** A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; and/or (iv) any third party consents;

h. **Irrevocable.** Each Bid must remain irrevocable until the closing of the Successful Bid (as defined below);

i. **Joint Bids.** The Debtors will be authorized to approve joint Bids in the Debtors' exercise of their reasonable good faith business judgment on a case-by-case basis, subject to Section 363(n) of the Bankruptcy Code;

j.  **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with their advisors, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate in the Sale of the Acquired Assets and the assumption of the Debtors' liabilities as set forth the APA, including payment of any cure amount that will be paid by the purchaser with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

k.  **No Fees.** The Bids must not be subject to any break up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

l.  **Jurisdiction.** Each bidder consents to the jurisdiction of the Bankruptcy Court as to all matters and disputes arising out of or related to the Bid, the Auction, the Sale, and all related matters.

**E.  Qualified Bids.**

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, the Debtors shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The APA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.  Bid Deadline.**

Qualified Bids must be received by each of the Debtors, their counsel, and the Debtor Contact, in each case so as to be actually **received no later than the Bid Deadline of September 6, 2018 at 5:00 p.m. (prevailing Pacific Time).**

**G.  Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and, in consultation with their advisors, identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Debtors shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.     No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the APA will be deemed the Successful Bid (as defined herein) and the Debtors will pursue entry of an order by the Bankruptcy Court approving the APA and authorizing the Sale of the Acquired Assets to the Stalking Horse Bidder at the Sale Hearing.

**I.     Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Acquired Assets.  The Auction shall commence on **September 13, 2108 at 10:00 a.m. (Pacific Time)** at the offices of Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, or such later time or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders upon 24 hours' notice.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

   a.     the Auction will be conducted openly;

   b.     only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

   c.     the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

   d.     only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

   e.     bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $250,000 net value to Debtors;

   f.     bidding rounds shall continue until no Qualified Bidder has made a bid during a bidding round, whereupon the last highest and best bid at the close of the immediately preceding round shall, subject to Section J below, be deemed the Successful Bid (as defined below)

   g.     each Qualified Bidder will be informed of the terms of the previous Bids;

   h.     the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

   i.     at the beginning of each round, each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; and

   j.     absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by the

Debtors after consultation with their advisors from time to time on the record at the Auction; provided, that, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the APA with respect to these Bidding Procedures.

**J.     Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things:

- a. the number, type and nature of any changes to the APA as appropriate;
- b. the total expected consideration to be received by the Debtors;
- c. the likelihood of the bidder's ability to close a transaction and the timing thereof; and
- d. the expected net benefit to the estates.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.     Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the APA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on **September 17, 2018 at 9:00 a.m.** (prevailing Pacific Time), or as soon thereafter as counsel may be heard, before the Honorable Peter C. McKittrick, United States Bankruptcy Judge in the United States Bankruptcy Court for the District of Oregon, 1001 SW 5th Ave #700, Courtroom # 1, Portland, OR 97204.

**L. Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid. Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M. Break-up Fee.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder (or the Stalking Horse Bidder elects not to have its bid be the Back-Up Bid), the Debtors shall be obligated to pay to the Stalking Horse Bidder from the proceeds of the purchase price for the Acquired Assets, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of such purchase price, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, the Break-up Fee and Expense Reimbursement and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the APA.

**N. Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities. If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after consummation of the Sale of the Acquired Assets.

The initial $560,000 deposit by the Stalking Horse Bidder will be held in a segregated, interest-bearing account (the "Account") either: (i) in Vanden Bos & Chapman's trust account; (ii) in a segregated account opened by Debtors as Debtors-in-Possession; or (iii) at an escrow company approved by Debtors and the Stalking Horse Bidder, and pursuant to escrow instructions reasonably acceptable to both Debtors and the Stalking Horse Bidder. The full amount of the deposit, and any interest thereon, will remain in the account until disbursed pursuant to the terms of the APA or further order of the Bankruptcy Court.

**O.     Reservation of Rights.**

The Debtors reserve their rights to, in any manner consistent with the Debtors' fiduciary duties and applicable law, modify these Bidding Procedures in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the APA) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Assets (subject to any restrictions set forth in the APA).

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.