Below is an Order of the Court.

_____

PETER C. McKITTRICK
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case Nos. |
| Sunshine Dairy Foods Management, LLC and Karamanos Holdings, Inc. | 18-31644-pcm11 (Lead Case) 18-31646-pcm11 |
| Debtors-in-Possession. | ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS |

THIS MATTER came before the Court for hearing on Debtors' Notice of Intent to Sell Property, Compensate Broker, and/or Pay any Secured Creditor's Fees and Costs; Motion for Authority to Sell Property Free and Clear of Liens; and Notice of Hearing (Dkt. No. 399) (the "Sale Motion"); Motion to Assume and Assign Executory Contracts and Determine Cure Amounts (Dkt No. 418) and Notice of Intent to Assume and Assign Executory Contracts and Determine Cure Amounts; Notice of Hearing Thereon (Dkt No. 401) (the "Assumption Motion"). Because of the interrelated relief requested in each motion, the Sale Motion and

Page 1 of 19    ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11    Doc 468    Filed 09/19/18

the Assumption Motion are collectively referred to herein as the "Motion." Pursuant to that certain Order Approving Bidding Procedures, Overbid Protection and Break-Up Fee, and Form and Manner of Notice of Sale (Dkt No. 425) (the "Procedures Order"), entered on August 28, 2018, this Court established Bidding Procedures (Dkt No. 429) regarding the sale of Debtors' East Plant assets, scheduled a time for an auction in the event upset bids were received, set a deadline for the filing of objections regarding the Motion, and scheduled a hearing to consider the Motion (the "Sale Hearing"). This Court having held the Sale Hearing on September 17, 2018 and having reviewed the Motion, considered the files and records in these cases, and now being fully advised,

THE COURT FINDS THAT:[1]

A.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are §§ 105(a), 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004, 6006 and 7062 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.      On or about August 10, 2018, Debtors and Lyrical Foods, Inc. ("Purchaser" or "Lyrical") entered into that certain Asset Purchase Agreement dated as of August 10, 2018 (as amended or modified from time to time, the "APA"), pursuant to which Purchaser agreed to purchase certain of Debtors' real property along with tangible and intangible personal property, including the assumption and assignment of the Assumed Executory Contracts (as defined in the APA and indicated on Exhibit B to the APA, as amended or modified from

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11      Doc 468      Filed 09/19/18

time to time)[2] subject to certain exclusions as set forth in the APA (the "Acquired Assets")

for an initial purchase price of $5,600,000 (subject to adjustment as set forth in the APA, the

" Purchase Price"), subject to certain conditions set forth in the APA (the "Sale").  A copy of

the APA is attached as **Exhibit A**.

D.      The Court entered the Procedures Order on August 28, 2018 and the

Procedures Order remains in full force and effect.

E.      As evidenced by the certificates of service, filed with this Court (the

"Certificates of Service"), and based on representations of counsel at the Sale Hearing, due,

proper, timely, adequate and sufficient notice of the Joint Motion for Approval of Bidding

Procedures, Overbid Protection and Break-Up Fee, and Form and Manner of Notice of Sale

(Dkt No. 377) (the "Bid Procedures Motion"), the hearing held on August 24, 2018 regarding

the Bid Procedures Motion (the "Bid Procedures Hearing"), the Procedures Order, the

Bidding Procedures, the Motion, the Sale Hearing, the APA, the Sale and the transactions

contemplated thereby, including without limitation the assumption and assignment of the

Assumed Executory Contracts, has been provided in compliance with the Procedures Order

and in compliance with the various applicable requirements of the Bankruptcy Code, Rules

2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, the Local Rules

of Bankruptcy Procedure for the U.S. Bankruptcy Court for the District of Oregon, and the

procedural due process requirements of the United States Constitution.  Such requirements

were satisfied by: (i) service of the "Notice of Intent to Sell Property, Compensate Broker,

---

[2] For the avoidance of doubt, the term "Assumed Executory Contracts" as used herein shall include all Contracts and Additional Contracts (each as defined in the Assumption Motion) indicated on Exhibit B to the APA (as amended or modified from time to time), except for any such Additional Contracts indicated on Exhibit B for which both (a) the Additional Contract Objection Deadline (as defined in the Assumption Motion) has not expired, and (b) the counterparty has not consented.

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL
PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME
AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE
AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11    Doc 468    Filed 09/19/18

and/or Pay any Secured Creditor's Fees and Costs; Motion for Authority to Sell Property Free and Clear of Liens; and Notice of Hearing" on debtors, the U.S. Trustee, each named lien holder at the address listed in the Notice of Intent to Sell, the Chairperson of the Official Committee of Unsecured Creditors (the "Committee"), their respective attorneys, all creditors and parties requesting special notice as listed in the Court's records that were obtained on August 21, 2018 ("Notice Date") and others who might have potential claims against the Debtor, (Dkt No. 399); (ii) service of the "Certificate of Service of Order Approving Bidding Procedures, Overbid Protection and Break-Up Fee, and Form and Manner of Notice of Sale" on the "List of Interested Parties" attached thereto (Dkt No. 431); and (iii) service of the "Notice of Bidding Procedures" (Dkt. Nos. 429, 435); (iv) service of the "Motion to Assume and Reject Executory Contracts" (Dkt No. 418),the "Notice of Intent to Assume and Reject Executory Contracts and Notice of Hearing Thereon" (Dkt No. 401), and any notices served with respect to any Additional Contracts (as defined in the Assumption Motion) (the "Additional Contracts Notices") on all parties to the applicable contracts, Debtors, U.S. Trustee, the Committee members, and their respective attorneys, plus those parties served with the Sale Motion. Such notice was good, sufficient and appropriate under the circumstances and no other or further notice of the Sale Motion and Notice, the Assumption Motion, Notice of Intent to Assume and Reject Executory Contracts, Additional Contracts Notices, or the transactions contemplated thereby (including, without limitation, the assumption and assignments of the Assumed Executory Contracts), is or shall be required.

F.    A reasonable opportunity to bid, to object and to be heard regarding the relief requested in the Motion has been afforded to all creditors, parties in interest, and other

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

entities, including, but not limited to (a) all creditors, (b) all parties who claim interests in or liens upon the Acquired Assets, (c) all parties to the Assumed Executory Contracts, (d) all parties who have filed notices of appearance in these cases, (e) the Office of the United States Trustee, (f) counsel to the  Committee, and (g) all known potential bidders.

G.      Certain parties have consented to the Sale and to the assumption and assignment of the Assumed Executory Contracts.  Such parties' consent shall not be deemed an admission or indication that such consent is or was required, and the provisions of this Order shall be applicable to all parties, irrespective of whether they have consented to the relief authorized and directed herein.

H.      Debtors may sell the Acquired Assets free and clear of all Interests (defined below) because either each entity with a security interest in any Acquired Assets to be transferred on the Closing Date (as defined in the APA), including the Assumed Executory Contracts either: (a) has consented to the Sale (including the assumption and assignment of the Assumed Executory Contracts) or is deemed to have consented to the Sale; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (c) otherwise falls within the provisions of §363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in §363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  No other notice is or was required in connection with the Bid Procedures Motion, the Bid Procedures Hearing, the Procedures Order, the Bidding Procedures, the Motion, the Sale Hearing, the APA, the Sale and the transactions contemplated thereby.  Those holders of Interests who have been properly noticed and who did not object to the Motion are deemed to have consented pursuant to §363(f)(2) of the Bankruptcy Code.

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

I.     Good and sufficient reasons for approval of the APA and the Sale have been articulated. The relief requested in the Motion is in the best interests of Debtors, their estates, their creditors and other parties in interest.

J.     Debtors have demonstrated both (a) good, sufficient and sound business purpose and justification and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to §363(b) of the Bankruptcy Code, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of Debtors' estates; that the Debtors lack sufficient cash or financing to continue operating; the Sale will provide the means for Debtors to maximize distributions to creditors; and absent consummation of the Sale, Debtors may be forced to conduct a piecemeal liquidation of the Acquired Assets, which is likely to yield substantially less proceeds available to distribute to creditors than the Sale.

K.     Purchaser negotiated, executed, delivered, and performed under the APA in good faith, and will purchase the Acquired Assets and take assignment of the Assumed Executory Contracts in good faith, and Purchaser therefore is a good faith purchaser under §363(m) of the Bankruptcy Code.  As such, Purchaser is entitled to all of the protections afforded a good faith purchaser with respect to the transactions contemplated by the APA.

L.     Debtors have the power and authority to execute the APA, and all other documents contemplated thereby, and to consummate the transactions contemplated by the APA. The APA and all of the transactions contemplated thereby have been duly and validly authorized by all necessary actions of Debtors.  No consents or approvals other than the authorization and approval of this Court are required for Debtors to consummate the Sale.

M.     The APA was negotiated, proposed and entered into by Debtors and

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11    Doc 468    Filed 09/19/18

Purchaser without collusion, in good faith and from arms'-length bargaining positions. Purchaser is not an "insider" of Debtors, or either of them, as that term is defined in §101(31) of the Bankruptcy Code. Neither Debtors nor Purchaser has engaged in any conduct that would cause or permit the Sale or any aspect thereof to be avoided under §363(n) of the Bankruptcy Code.

N.      As determined by the Court on September 17, 2018, Lyrical submitted the highest and best qualified bid for the Acquired Assets, as reflected in the APA. No other bids were received for the Acquired Assets on or before the Bid Deadline (as defined in the Bidding Procedures).

O.      Purchaser has provided Debtors with a cash deposit of $560,000.00 (five hundred sixty thousand dollars) and has adequately demonstrated its unconditional financial wherewithal to pay the Purchase Price and to consummate the Sale.

P.      The consideration to be provided by Purchaser pursuant to the APA: (a) is fair and reasonable; (b) is the highest and best offer for the Acquired Assets provided in accordance with the Procedures Order; and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state law.

Q.      The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and applicable state law.

R.      The transfer of the Debtors' right, title and interest in the Acquired Assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Acquired Assets, including the Assumed Executory Contracts, and, except for the Assumed Liabilities (as defined in the APA) and Permitted Encumbrances (as defined in the APA), will vest the Buyer with all of the Debtors' right, title and interest of, in and to the Acquired Assets, free

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

and clear of (i) all claims (as defined in § 101(5) of the Bankruptcy Code), liens, encumbrances, and interests (as used in § 363(f) of the Bankruptcy Code), whether arising prior to or as a consequence of or subsequent to the commencement of the Debtors' chapter 11 cases, whether arising in connection with the transactions authorized by this Order, whether imposed by agreement, understanding, law, equity or otherwise, whether secured or unsecured, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, and (ii) all Excluded Liabilities (all of (i) and (ii) collectively, the "Interests"[3]).

S.     Debtors have demonstrated that assuming and assigning the Assumed Executory Contracts in connection with the Sale is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of Debtors' estates.

T.     Except as otherwise provided in **Exhibit B** to this Order, the amounts set forth on Exhibit A to the Assumption Motion (with respect to any Contract that is an Assumed Executory Contract) and the applicable Additional Contracts Notice (with respect to any Additional Contract that is an Assumed Executory Contract)  are the sole amounts necessary to be paid pursuant to § 365 of the Bankruptcy Code in order to cure any breaches and defaults in accordance with §§ 365(b) and 365(f)(2) of the Bankruptcy Code or to provide any adequate assurance of future performance required under § 365(b)(1)(C)

---

[3]Interests to attach to Debtor's interest in the proceeds of the Sale (the "Sale Proceeds") in order of priority, subject to any rights, claims and defenses of Debtor or objections of other interested parties with respect thereto and subject to the remaining provisions of this Order.

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11     Doc 468     Filed 09/19/18

of the Bankruptcy Code and assume and assign such Assumed Executory Contract to the Purchaser (the "Cure Amounts").

U.      As of the Closing Date, subject only to the payment of the Cure Amounts, each Assumed Executory Contract will be in full force and effect and enforceable against the non-Debtor party thereto in accordance with its terms, and no claim of any non-Debtor party thereto relating to any period prior to the Closing Date may be asserted or enforced against Purchaser.

V.      On or before the Closing Date, Debtors or Purchaser will pay in full all Cure Amounts, as provided in the APA.

W.      Debtors have, to the extent necessary, satisfied the requirements of §§ 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the Sale and the assumption of the Assumed Executory Contracts and shall, upon assignment thereof on the Closing Date and payment of all Cure Amounts, be relieved from any breach thereof and any liability or obligation for any such breach thereof.

THEREFORE, IT IS HEREBY ORDERED:

1.      The Motion is GRANTED. All relief granted by the Procedures Order is hereby incorporated by reference to this Order and remains in full force and effect.

2.      Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are denied and overruled on the merits with prejudice.

3.      The terms and conditions of the APA are hereby approved in all respects. Pursuant to the provisions of §§105, 363 and 365 of the Bankruptcy Code, Debtors are

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11      Doc 468      Filed 09/19/18

hereby authorized and directed to sell the Acquired Assets described in the APA to Purchaser and to assume and assign the Assumed Executory Contracts to Purchaser, free and clear of all Interests, except the Assumed Liabilities and Permitted Encumbrances.

4.    Debtors are authorized and directed to execute and deliver, and empowered and directed to fully perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further action as may be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, or reducing to Purchaser's possession, any or all of the Acquired Assets, or as otherwise may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

5.    The Acquired Assets shall be transferred to Purchaser and, as of the Closing Date, shall be free and clear of all Interests, with the exception of the Assumed Liabilities and the Permitted Encumbrances. All Interests, with the exception of the Assumed Liabilities and the Permitted Encumbrances, shall attach to the Sale Proceeds to the same extent, priority and validity as they attached to the Acquired Assets, subject to any rights, claims and defenses Debtors may possess with respect thereto.  At closing, the Sale Proceeds, after payment of all necessary closing costs, including title and escrow fees, recording fees, and fees attributable to this sale payable to the United States Trustee under 28 U.S.C. § 1930, shall be paid to the Debtors' estates, and will be held by the Debtors for distribution upon further order of the Court.

6.    Multnomah County filed a limited objection to the Sale [Dkt No. 441] (the "Multnomah Objection") with respect to liens asserted by it on all or a portion of the Acquired

Page 10 of 19    ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL
PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME
AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE
AMOUNTS
{00204699:1}
ActiveUS 169722836v.1    Case 18-31644-pcm11    Doc 468    Filed 09/19/18

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Assets (the "Multnomah Liens") to secure tax obligations owing by the Debtors (the "Multnomah Taxes"). The Multnomah Liens shall attach to the Sale Proceeds to the same extent, priority and validity as they attached to the Acquired Assets, subject to any rights, claims and defenses Debtors may possess with respect thereto. For the avoidance of doubt, the Acquired Assets shall be transferred to the Purchaser on the Closing Date free and clear of the Multnomah Liens, and Purchaser shall have no liability or obligation with respect to the Multnomah Taxes. The Multnomah Objection is resolved as set forth herein.

7.    On September 7, 2018, Electric, Inc. filed two notices of continuation, maintenance, perfection, and enforcement of construction lien claim [Dkt Nos. 442, 443] with respect to liens asserted by it on the Acquired Property (the "Electric Liens"). The Electric Liens shall attach to the Sale Proceeds to the same extent, priority and validity as they attached to the Acquired Assets, subject to any rights, claims and defenses Debtors may possess with respect thereto. For the avoidance of doubt, the Acquired Assets shall be transferred to the Purchaser on the Closing Date free and clear of the Electric Liens, and Purchaser shall have no liability or obligation to Electric, Inc.

8.    For the avoidance of doubt, the Acquired Assets shall include the following assets: (a) two 2014 Toyota Pallet Trucks, Model #7HBW23-54655 and 54656, (b) two 2014 Toyota Pallet Trucks, Model #7HBW23-54342 and 54350, (c) one 2014 Toyota Pallet Truck, Model #7HBW23-53677 (collectively, the "Toyota Equipment"). Any liens on the Toyota Equipment shall attach to the Sale Proceeds to the same extent, priority and validity as they attached to the Toyota Equipment, subject to any rights, claims and defenses Debtors may possess with respect thereto. For the avoidance of doubt, the Toyota Equipment shall be

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 18-31644-pcm11    Doc 468    Filed 09/19/18

transferred to the Purchaser on the Closing Date free and clear of all Interests, and Purchaser shall have no liability or obligation with respect to the Toyota Equipment.

9.     Purchaser shall have no liability or responsibility for any liability or other obligation of Debtors arising under or related to the Acquired Assets other than as expressly set forth in the APA. Notwithstanding the foregoing, Debtors and Purchaser have determined that, in order for the condition set forth in Section 8.3(e) of the APA to be satisfied, Purchaser will honor vacation and sick time accrued as of the Closing Date for the Key Employees and Other Employees (each as defined in the APA) that accept employment with Purchaser as of the Closing Date (the "Employee Benefit Liabilities"). The Employee Benefit Liabilities shall be deemed to constitute Assumed Liabilities under the APA. To accommodate Purchaser's assumption of the Employee Benefit Liabilities, a portion of the Purchase Price equal to the Employee Benefit Liabilities will be refunded to Purchaser on the Closing Date, to be effected through an adjustment of the net Purchase Price payable to the Debtors, under the same mechanics set forth in Section 4.5 of the APA.

10.     Purchaser shall not be deemed, as a result of any action taken in connection with the APA, to: (a) be the successor of Debtors or either of them; (b) have, de facto or otherwise, merged with or into Debtors or either of them; (c) be a mere continuation or substantial continuation of Debtors or the enterprise of Debtors; or (d) be responsible for any liability of Debtors or for payment of any benefit accruing to Debtors. Purchaser shall take the Acquired Assets free and clear of any claim of successor liability.

11.     Neither Purchaser nor its affiliates, successors or assigns is acquiring or assuming any liability, warranty or other obligation of Debtors, including, without limitation, any tax incurred but unpaid by Debtors prior to the Closing Date, including, but not limited

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

to, any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, fixed or audited, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, except as otherwise expressly provided in the APA.

12. The transfer of the Acquired Assets to Purchaser pursuant to the APA constitutes a legal, valid and effective transfer of the Acquired Assets, and shall vest Purchaser with all right, title and interest of Debtors in and to the Acquired Assets free and clear of all Interests (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever.

13. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets or a bill of sale transferring good and marketable title in the Acquired Assets to Purchaser. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

14. This Order is and shall be effective as a determination that, all liens shall be, and are, without further action by any person or entity, released with respect to the Acquired Assets as of the Closing Date.

15. Daniel J. Boverman, Debtors' Chief Restructuring Officer, or another authorized representative of the Debtors, on behalf of Debtors, is hereby authorized, in accordance with §§105(a), 363 and 365 of the Bankruptcy Code, to (a) assume and assign to Purchaser, effective upon the Closing Date, the Assumed Executory Contracts, and/or to transfer, sell and deliver to Purchaser all of Debtors' right, title and interest in and to the

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Assumed Executory Contracts, free and clear of all Interests of any kind or nature whatsoever (other than Assumed Liabilities and Permitted Encumbrances), (b) execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Executory Contracts to Purchaser or to accomplish any of the transfers contemplated by the Sale; or (c) any and all other documents reasonably necessary to consummate all transactions contemplated in the APA.

16. The requirements of §§365(b)(1) and 365(b)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Assumed Executory Contracts (subject to payment of the Cure Amounts). The Assumption Motion is granted. The Assumed Executory Contracts assumed by Debtors and assigned to Purchaser pursuant to this Order are limited to those shown on **Exhibit B** attached hereto.

17. The Assumed Executory Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Assumed Executory Contract (including provisions of the type described in §365(b)(2), (e)(1) and (f)(1) of the Bankruptcy Code), which prohibits, restricts or conditions such assignment or transfer. The non-Debtor party to each Assumed Executory Contract shall be deemed to have consented to such assignment under §365(c)(1)(B) of the Bankruptcy Code, and Purchaser shall enjoy all of the rights and benefits under each such Assumed Executory Contract as of the Closing Date without the necessity of obtaining such non-Debtor party's written consent to the assumption and assignment thereof.

18. Subject to payment of the Cure Amounts, all defaults or other obligations of Debtors under the Assumed Executory Contracts arising or accruing prior to the Closing

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Date will be cured as of the Closing Date in accordance with the terms of the APA such that Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assumed Executory Contract prior to the Closing Date, and no claim of any non-Debtor party thereto relating to any period prior to the Closing Date may be asserted or enforced against Purchaser.  Each non-Debtor party to an Assumed Executory Contract is forever barred, estopped and permanently enjoined from asserting a cure amount different from the Cure Amount or asserting against Purchaser or its property or affiliates, any breach or default or any liability or obligation for any breach of default arising prior to the Closing Date under any Assumed Executory Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assumed Executory Contract or with regard to the assumption and assignment thereof pursuant to the APA or this Order.

19.     Upon assignment of the Assumed Executory Contracts to Purchaser on the Closing Date and payment of the Cure Amounts no breach or default shall exist under any Assumed Executory Contract and no non-Debtor party to any Assumed Executory Contract shall be permitted to declare a breach or default by Purchaser under such Assumed Executory Contract or otherwise take action against Purchaser as a result of Debtors' financial condition, bankruptcy or failure to pay any amounts necessary to cure Debtors' defaults thereunder. Upon entry of this Order and assumption and assignment of the Assumed Executory Contracts, Purchaser shall be deemed in compliance with all terms and provisions of the Assumed Executory Contracts.

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11     Doc 468     Filed 09/19/18

20. Notwithstanding anything to the contrary in this Order, upon assumption of the Assumed Executory Contracts, Purchaser is assuming all liabilities arising under the Assumed Executory Contracts arising and accruing on and after the Closing Date.

21. The notice procedures set forth in the Assumption Motion with respect to assumption and assignment of Additional Contracts that are not Assumed Executory Contracts as of the date of this Order are hereby approved.

22. The consideration provided by Purchaser for the Acquired Assets under the APA is fair and reasonable, and the Sale may not be avoided, or costs or damages imposed or awarded, under §363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code or applicable law.

23. Purchaser negotiated, executed, delivered, and performed under the APA in good faith, as that term is used in §363(m) of the Bankruptcy Code, and will purchase the Acquired Assets and take assignment of the Assumed Executory Contracts in good faith, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to Purchaser. Purchaser is a good-faith purchaser of the Acquired Assets, including the Assumed Executory Contracts, and is entitled to all of the benefits and protections afforded by §363(m) of the Bankruptcy Code.

24. This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets and assignment of the Assumed Executory Contracts to Purchaser, (b) resolve any disputes

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

arising under or related to the APA or the Assumed Executory Contracts and (c) interpret, implement and enforce the provisions of this Order.

25.     On or before the Closing Date, each of Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary, or reasonably requested by Debtors or Lyrical, to release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or otherwise exist.

26.     If any person or entity that has filed financing statements, mortgages, agricultural liens, lis pendens or other documents or agreements evidencing Interests (including any statutory lien claims such as agricultural produce, agricultural service, or nurserymen's liens) with respect to the Acquired Assets shall not have delivered to Debtors and Purchaser prior to the Closing Date in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests that the person or entity has with respect to Debtors and/or Acquired Assets or otherwise, then (a) Debtors are hereby authorized as part of the closing of the Sale, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such assets and contracts and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Acquired Assets as of the Closing Date of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Encumbrances).

27.     The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, their successors and assigns, Purchaser and its respective affiliates, successors and assigns, and any

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

28.     After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Acquired Assets on account of, or (b) collect or attempt to collect from Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by Debtors) (i) for any period commencing before and concluding prior to or after the Closing Date or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the APA.

29.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transfer of the Acquired Assets to Purchaser.

30.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on Debtors' estates.

31.     The provisions of the APA and this Order shall remain effective and enforceable notwithstanding the subsequent entry of any order confirming any Chapter 11 plan or other order in these cases (including any order entered after any conversion of these cases under Chapter 7 of the Bankruptcy Code).

32.     The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11     Doc 468     Filed 09/19/18

the Court that the APA be authorized and approved in its entirety.  Likewise, all of the

provisions of this Order are nonseverable and mutually dependent.  In the event of any

direct conflict between the terms of the APA and this Order, this Order shall be controlling.

33.     This Order shall be effective and enforceable immediately upon entry and,

notwithstanding the provisions of Bankruptcy Rules 6004 and 6006, this Order shall not be

stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable

immediately upon issuance hereof.  Time is of the essence in closing the transactions

referenced herein and Debtors and Purchaser intend to close the Sale as soon as

practicable.

34.     Any closing of the transactions set forth in the APA shall be subject to the

protections of § 363(m) and all principles of equitable mootness.


### 

I certify that I have complied with the requirements of LBR 9021-1(a)(2)(A).

PRESENTED BY:

VANDEN BOS & CHAPMAN, LLP          MOTSCHENBACHER & BLATTNER LLP


By:/s/Douglas R. Ricks                         By:/s/Nicholas J. Henderson
   Douglas R. Ricks, OSB #044026             Nicholas J. Henderson, OSB #074027
   Of Attorneys for Debtor-in-Possession     Of Attorneys for Debtor-in-Possession
   Sunshine Dairy Foods Management, LLC      Karamanos Holdings, Inc.

**First Class Mail:**                        **Electronic Mail:**

See Attached List. (The original Service List   The foregoing was served on all CM/ECF
is attached to the original copy filed with the  participants through the Court's Case
Court only.  Creditors may request a copy        Management/Electronic Case File system.
of the Service List by contacting the
undersigned.)

ORDER GRANTING DEBTORS' (1) MOTION FOR AUTHORITY TO SELL
PROPERTY FREE AND CLEAR OF LIENS AND (2) MOTION TO ASSUME
AND ASSIGN EXECUTORY CONTRACTS AND DETERMINE CURE
AMOUNTS

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

{00204699:1}
ActiveUS 169722836v.1

Case 18-31644-pcm11     Doc 468     Filed 09/19/18

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**LYRICAL FOODS, INC.**

**as Purchaser,**

**and**

**SUNSHINE DAIRY FOODS MANAGEMENT, LLC and KARAMANOS HOLDINGS, INC.**

**as Sellers**

**Dated as of August 10, 2018**

# TABLE OF CONTENTS

Page

ARTICLE I.

   DEFINITIONS .................................................................................1
 1.1 Certain Definitions ..................................................................1

ARTICLE II.

   ACQUISITION AND TRANSFER OF ASSETS; ASSUMPTION
   OF LIABILITIES .........................................................................8
 2.1 Transfer of Assets. .................................................................8
 2.2 Excluded Assets ....................................................................8
 2.3 Assumed Liabilities ...............................................................8
 2.4 Excluded Liabilities ...............................................................8
 2.5 Assumed Executory Contracts ...............................................8
 2.6 Liens and Encumbrances .......................................................9

ARTICLE III.

   CONSIDERATION ......................................................................9
 3.1 Consideration. .......................................................................9
 3.2 Payment of Purchase Price at Closing ...................................9
 3.3 Assumed Liabilities ...............................................................9
 3.4 Allocation of Consideration ...................................................9
 3.5 Deposit ................................................................................10
 3.6 Alteration and Amendment of Exhibits; Cure Costs ..............10

ARTICLE IV.

   CLOSING AND TERMINATION .............................................10
 4.1 Closing. ...............................................................................10
 4.2 Conveyances at Closing ........................................................11
 4.3 Additional Deliveries ...........................................................11
 4.4 Transaction Expenses ...........................................................12
 4.5 Prorations. ...........................................................................12
 4.6 Termination of Agreement ....................................................12
 4.7 Procedure Upon Termination ................................................13
 4.8 Effect of Termination ...........................................................13

ARTICLE V.

REPRESENTATIONS AND WARRANTIES OF SELLERS...................14

5.1   Organization and Power. .................................................................14
5.2   Corporate Authorization. ................................................................14
5.3   Binding Effect ................................................................................14
5.4   Ownership of Acquired Assets ........................................................14
5.5   Finders' Fees ..................................................................................15
5.6   No Other Representations or Warranties .........................................15

ARTICLE VI.

REPRESENTATIONS AND WARRANTIES OF PURCHASER ............15

6.1   Organization and Power .................................................................15
6.2   Authorization .................................................................................15
6.3   Binding Effect ................................................................................15
6.4   Funding ..........................................................................................15
6.5   Adequate Assurances Regarding Assumed Executory Contracts ...................16
6.6   Finders' Fees ..................................................................................16
6.7   Good Faith Purchaser. ...................................................................16
6.8   Purchaser Experience .....................................................................16

ARTICLE VII.

CERTAIN COVENANTS ........................................................16

7.1   Bankruptcy Sale Process. ...............................................................16
7.2   Stalking Horse Provisions................................................................17
7.3   Pre-Closing Operating Covenants of Sellers....................................18
7.4   Access to Information......................................................................19
7.5   Reasonable Efforts; Further Assurances of Each Party......................20
7.6   Regulatory Affairs ..........................................................................20

ARTICLE VIII.

CONDITIONS TO CLOSING....................................................20

8.1   Conditions Precedent to the Obligations of Sellers and Purchaser..................20
8.2   Conditions Precedent to the Obligations of Sellers.........................21
8.3   Conditions Precedent to the Obligations of Purchaser.....................21

ARTICLE IX.

MISCELLANEOUS .................................................................22

9.1    Transfer Taxes .................................................................22

9.2    Releases .................................................................22

9.3    Survival. .................................................................22

9.4    Injunctive Relief .................................................................23

9.5    Entire Agreement; Amendments and Waivers.................................................................23

9.6    Counterparts; Electronic Signatures .................................................................23

9.7    Governing Law .................................................................23

9.8    Waiver of Jury Trial. .................................................................24

9.9    Notices. .................................................................24

9.10    Binding Effect; Assignment .................................................................25

9.11    Third Party Beneficiaries .................................................................26

9.12    Publicity.. .................................................................26

9.13    Severability.................................................................26

9.14    Time of the Essence .................................................................26

9.15    Obligations of Parties .................................................................26

9.16    Miscellaneous. .................................................................26

## EXHIBITS

| | |
|---|---|
| Exhibit A | Acquired Assets |
| Exhibit B | Assumed Executory Contracts |
| Exhibit C | Assumed Liabilities |
| Exhibit D | Employees |
| Exhibit E | Bill of Sale |
| Exhibit F | Form of Assignment and Assumption Agreement |

# ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of August 10, 2018 (the "Execution Date"), is made and entered into by and among LYRICAL FOODS, INC., a Delaware corporation ("Purchaser"), SUNSHINE DAIRY FOODS MANAGEMENT, LLC, an Oregon limited liability company and KARAMANOS HOLDINGS, INC, an Oregon corporation (each a "Seller", and collectively "Sellers").  Certain capitalized terms used herein are defined in Article I.

## RECITALS

WHEREAS, on May 9, 2018, Sellers commenced jointly-administered cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"); and

WHEREAS, Purchaser desires to acquire certain assets of Sellers identified herein, and Sellers desire to sell, convey, assign, and transfer to Purchaser such assets pursuant to the terms and conditions  of this Agreement; and

WHEREAS, it is intended that the Acquired Assets (defined below), will be sold and purchased pursuant to the terms of this Agreement in a sale authorized by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code; and

WHEREAS, it is intended that the Bankruptcy Court shall approve the assumption and assignment of certain Executory Contracts (defined below) under section 365 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Purchaser and Sellers hereby agree as follows:

## ARTICLE I.

## DEFINITIONS

1.1     Certain Definitions.  For purposes of this Agreement, the following terms used in this Agreement shall have the respective meanings assigned to them below:

(a)     "Accounts Receivable" means (i) any and all accounts receivable, trade accounts and other amounts (including overdue accounts receivable) owed to Sellers relating to, or arising in connection with the operation and conduct of, the Business and any other similar rights of Sellers to payment from third parties and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of services rendered, in each case owing to Sellers; (ii) all other accounts or notes receivable of Sellers and the full benefit of all security for such accounts or notes receivable; and (iii) any and all claims, remedies

or other rights relating to any of the foregoing, together with any interest or unpaid financing charges accrued thereon.

(b) "Acquired Assets" means, all right, title and interest of Sellers in certain of their assets, including the Acquired Property, set forth in Exhibit A hereto, which excludes all right, title and interest of Sellers in the Excluded Assets.

(c) "Acquired Property" means that certain property located at 8440 NE Halsey Street, Portland, Oregon 97220.

(d) "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

(e) "Alternative Transaction" means a sale, transfer or other disposition of all or any substantial portion of the Acquired Assets to any person or entity (or persons or entities) other than Purchaser, in any transaction or series of transactions.

(f) "Assumed Executory Contracts" means the Executory Contracts assumed by and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code in accordance with the Bidding Procedures, set forth in Exhibit B hereto.

(g) "Assumed Liabilities" means, only those liabilities expressly set forth on Exhibit C hereto, which include the Assumed Executory Contracts.

(h) "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

(i) "Bidding Procedures" means the procedures governing the submission, evaluation and qualification of competing bids on the Acquired Assets, and the auction among qualified bidders for the purchase of the Acquired Assets, as described in the Bidding Procedures Order.

(j) "Bidding Procedures Order" means an order of the Bankruptcy Court, reasonably satisfactory in form and substance to Sellers, Purchaser and their respective counsel, approving the sale process described in the Sale Motion and the Bidding Procedures, including, without limitation, the Stalking Horse Provisions.

(k) "Break Fee" means that amount payable pursuant to Section 7.2(b) as liquidated damages, and not as a penalty, in the amount of $150,000.

(l) "Business" means the business of operating a dairy and dairy substitute processing, manufacturing and co-packing business at the Acquired Property.

(m) "Business Day" means any day other than a Saturday, Sunday or a legal holiday on which banking institutions in the State of Oregon are not required to open.

(n) "Cash and Cash Equivalents" means all of Sellers' cash (including petty cash but excluding any checks that remain uncashed or uncleared prior to the close of business on the Closing Date), checking account balances, marketable securities, certificates of deposits, time deposits, bankers' acceptances, commercial paper and government securities and other cash equivalents.

(o) "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

(p) "Contract" means any written or oral contract, lease, purchase order, service order, sales order, or instrument or other agreement, arrangement or commitment that is binding upon a Person or its property, and any amendments, modifications or supplements thereto.

(q) "Cure Costs" means all costs required to pay all amounts, obligations and liabilities accrued, due and to become due and all costs and other obligations required to cure all defaults that may exist under any Assumed Executory Contract as of the Closing Date or that may arise after the Closing Date based on the occurrence of an event that occurred prior to the Closing Date.

(r) "Deposit" shall mean the good-faith deposit in the amount of 10% of the Cash Purchase Price (defined below) deposited by Purchaser on or prior to August 20, 2018, in an account to be determined by Sellers and Purchaser.

(s) "Documents" means all of Sellers' written files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, plans, operating records, safety and environmental reports, data, studies and documents, Tax Returns, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, research material, technical documentation (design specifications, engineering information, test results, maintenance schedules, functional requirements, operating instructions, logic manuals, processes, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials related to, used in, or held for use in connection with the Business or any of the Acquired Assets, in each case whether or not in electronic form.

(t) "Encumbrance" means any lien, encumbrance, Claim, right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, condition, restriction, encroachment, rights of first refusal, preemptive right, judgment, conditional sale or other title retention agreements and other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever, whether secured

or unsecured, choate or inchoate, filed or untiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

(u)     "Excluded Assets" means (i) Cash and Cash Equivalents and (ii) Account Receivables of the Sellers, but only to the extent that such Accounts Receivable are based solely on actions of Sellers prior to the Closing Date and if such Accounts Receivable are fully accrued and vested as of the Closing Date, with no further condition precedent to any obligation thereon, and (iii) those other assets and properties of Sellers that are not included in the Acquired Assets.

(v)     "Excluded Liabilities" means those liens, Claims, interests, Encumbrances or Liabilities of Sellers or related to the Acquired Assets or any other assets of Sellers, whether actual or contingent, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, or known or unknown, that are not the Assumed Liabilities set forth on Exhibit C hereto, and which shall include (i) any employment related obligations, except to the extent such liabilities arise after the Closing under an Assumed Executory Contract, (ii) any liabilities to customers or end users on account of any products of Sellers or otherwise, whether products liability claims, warranty or defect claims, successor liability claims, or otherwise, and (iii) any liabilities of the Sellers with respect to any pension plan or the Employee Retirement Income Security Act of 1974.

(w)     "Executory Contracts" means all executory contracts (including licenses) and unexpired leases in effect as of the date hereof to which Sellers is a party.

(x)     "Expense Reimbursement" shall have the meaning set forth in Section 7.2.

(y)     "Final Order" means an Order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in Sellers' Chapter 11 Cases or the docket of such other court, which has not been modified, amended, reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari,* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending or (ii) if an appeal, writ of *certiorari,* new trial, reargument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such Order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired, as a result of which such Order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such Order, shall not cause such Order not to be a Final Order.

(z) "Final Sale Notice" means a notice distributed in accordance with the Bidding Procedures regarding the transactions contemplated by this Agreement and the Sale Order.

(aa) "Governmental Body" means any government, quasi-governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature, whether foreign, federal, state, provincial or local, or any ministry agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrator (public or private) or any judicial, quasi-judicial or administrative body, or any regulatory body of applicable jurisdiction

(bb) "Intellectual Property" shall mean the following subsisting throughout the world: Patent Rights; Trademarks and all goodwill in the Trademarks; copyrights, designs, data and database rights and registrations and applications for registration thereof, including moral rights of authors; mask works and registrations and applications for registration thereof; inventions, invention disclosures, statutory invention registrations, trade secrets and confidential business information, know-how, manufacturing and product processes and techniques, research and development information, financial, marketing and business data, pricing and cost information, business and marketing plans and customer and supplier lists and information, whether patentable or nonpatentable, whether copyrightable or noncopyrightable and whether or not reduced to practice; and other proprietary rights relating to any of the foregoing (including remedies against infringement thereof and rights of protection of interest therein under the laws of all jurisdictions).

(cc) "Key Employees" means those employees of the Sellers designated by Purchaser and as listed on Schedule 1 to Exhibit D hereto, which may be amended from time to time prior to the Closing Date by Purchaser, but such amendments may only remove employees from Schedule 1 to Exhibit D, not substitute or add employees.

(dd) "Laws" (and each, a "Law") means all federal, state, provincial, local or foreign laws, statutes, common law, rules, codes, regulations, restrictions, ordinances, Orders, decrees, approvals, directives, judgments, rulings, injunctions, writs and awards of, or issued, promulgated, enforced or entered by, any and all Governmental Bodies, or court of competent jurisdiction, or other legal requirement or rule of law, including common law.

(ee) "Legal Proceeding" means any judicial, administrative or arbitral actions, suits, proceedings (public or private) or claims or any proceedings by or before a Governmental Body.

(ff) "Liability" means, as to any Person, any debt, adverse claim, liability, duty, responsibility, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent,

direct or indirect, joint or several, accrued or unaccrued, liquidated or unliquidated, or due or to become due, including all costs and expenses relating thereto.

(gg) "Notice of Proposed Assumed Executory Contracts" means a notice filed by Sellers with the Bankruptcy Court in accordance with the Bidding Procedures identifying the Executory Contracts Purchaser intends to assume as of the Closing Date, which notice may be amended pursuant to Section 2.5(a) and Section 3.6.

(hh) "Order" means any order, writ, judgment, injunction, decree, stipulation, determination, decision, verdict, ruling, subpoena, or award entered by or with any governmental authority (whether temporary, preliminary or permanent).

(ii) "Other Employees" means those employees of the Sellers designated by Purchaser and as listed on Schedule 2 to Exhibit D hereto, which may be amended from time to time prior to the Closing Date by Purchaser.

(jj) "Patent Rights" shall mean all patents, patent applications, utility models, design registrations and certificates of invention and other governmental grants for the protection of inventions or industrial designs (including all related continuations, continuations-in-part, divisionals, reissues and reexaminations).

(kk) "Permits" means all licenses, permits (including environmental, construction and operation permits), provider numbers, franchises, certificates, approvals, consents, waivers, clearances, exemptions, classifications, registrations, orders and other similar documents and authorizations issued by any Governmental Body and/or any self-regulatory body or organization to or for the benefit of Sellers and used, or held for use, in connection with the operation of the Business or applicable to ownership of the Acquired Assets or assumption of the Assumed Liabilities.

(ll) "Permitted Encumbrance" means, collectively, all of the following: (a) applicable zoning, subdivision, building and other land use laws and regulations; (b) all matters, whether or not of record, that arise out of the actions of Purchasers or Purchaser's agents; (c) all matters that a title insurer is willing to insure over without additional premium or indemnity and which do not have a material adverse impact on the ownership, operation or value of the Acquired Property; (d) all matters shown on or referenced in a title insurance commitment or otherwise of record as of the Execution Date; and (e) all matters shown on a current boundary survey of the Acquired Property or such state of facts as would be disclosed by a physical inspection of the Acquired Property as of the Execution Date.

(mm) "Person" means an individual, corporation, partnership, limited liability company, unlimited liability company, joint venture, association, trust, unincorporated organization, labor union, estate, Governmental Body or other entity or group.

(nn) "Petition Date" means the date Sellers commenced their Chapter 11 Cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

(oo)    "Regulatory Approvals" means any consents, waivers, approvals, Orders, Permits or authorizations of any Governmental Body required in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder.

(pp)    "Sale Hearing" means the hearing before the Bankruptcy Court to approve this Agreement and seeking entry of the Sale Order.

(qq)    "Sale Motion" means a motion of the Sellers, filed in the Bankruptcy Court, reasonably satisfactory in form and substance to the Sellers, Purchaser, and their respective counsel, seeking approval of the Bidding Procedures, the Stalking Horse Provisions, this Agreement and the transactions contemplated herein, and entry of the Bidding Procedures Order and Sale Order.

(rr)    "Sale Order" means an order of the Bankruptcy Court, satisfactory in form and substance to Purchaser, (a) approving this Agreement and the transactions contemplated herein, including, without limitation, the sale of the Acquired Assets free and clear of all liens, Claims, interests and Encumbrances, including those relating to mortgages, Taxes (other than Transfer Taxes), warranty, products liability, successor liability, environmental obligations or liabilities (including under the Comprehensive Environmental Response, Compensation, and Liability Act), pensions or under the Employee Retirement Income Security Act of 1974, (b) the assumption and assignment of all Assumed Executory Contracts, and (c) including, without limitation, a finding that Purchaser has acted in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

(ss)    "Stalking Horse Provisions" means the Break Fee, the Expense Reimbursement, and the other provisions described in Section 7.2 of this Agreement.

(tt)    "Subsidiary" means, with respect to any Person, (a) any other Person that directly, or indirectly through one or more intermediaries, is controlled by such Person; or (b) any other Person where a majority of its equity interests are held, directly, or indirectly through one or more intermediaries, by such Person.  For purposes of this definition, "control" (including, with correlative meaning, the terms "controlling" and "controlled") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

(uu)    "Tax" and "Taxes" mean any and all taxes, charges, fees, tariffs, duties, impositions, levies or other assessments, imposed by any Laws or Governmental Body, and including any interest, penalties or additional amounts attributable to, imposed upon, or with respect thereto.

(vv)    "Tax Return" means any return, report, information return, declaration, claim for refund or other document (including any schedule or related or supporting information) supplied or required to be supplied to any Governmental Body with respect to Taxes, including attachments thereto and amendments thereof.

(ww) "Third Party" means any Person that is not a party hereto or an Affiliate or a party hereto.

(xx) "Trademarks" shall mean all trademarks and service marks, logos, trade dress, Internet domain names, corporate names and doing business designations and all registrations and applications for registration of the foregoing.

(yy) "Transaction Documents" means any and all such instruments required to effectuate the transactions contemplated by this Agreement.

## ARTICLE II.

## ACQUISITION AND TRANSFER OF ASSETS; ASSUMPTION OF LIABILITIES

2.1 <u>Transfer of Assets</u>. Subject to approval of the Bankruptcy Court, and upon the terms and subject to the conditions and provisions contained herein, at the Closing, Sellers shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall acquire and accept from Sellers, the Acquired Assets, subject to all Assumed Liabilities and Permitted Encumbrances, otherwise free and clear of all liens, Claims, interests, Encumbrances and Excluded Liabilities, subject to <u>Section 2.4</u> below. Notwithstanding anything to the contrary, the Acquired Assets shall not include any of the Excluded Assets.

2.2 <u>Excluded Assets</u>. Notwithstanding anything to the contrary in this Agreement, the Acquired Assets shall not include, and Sellers shall retain, all of their right, title and interest in and to, and shall not sell, convey, transfer, assign or deliver to Purchaser any of the Excluded Assets.

2.3 <u>Assumed Liabilities</u>. At the Closing, Purchaser shall assume and have sole responsibility for the Assumed Liabilities.

2.4 <u>Excluded Liabilities</u>. For the avoidance of doubt, notwithstanding any other terms, provisions and conditions of this Agreement, Purchaser shall not assume, or otherwise be responsible or liable for, the Excluded Liabilities.

2.5 <u>Assumed Executory Contracts</u>. To the maximum extent permitted by the Bankruptcy Code and in accordance with the Bidding Procedures, each Assumed Executory Contract shall be assumed by and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code as of the later of: (a) if no objection is filed by the Closing Date to the Notice of Proposed Assumed Executory Contracts, the Closing Date, or (b) if an objection is filed by the Closing Date to the Notice of Proposed Assumed Executory Contracts, the date such assumption and assignment is approved by an Order of the Bankruptcy Court.

(a) Subject to <u>Section 3.6</u> hereof, on or before the Closing Date, Purchaser may, at any time and for any reason, in its sole discretion, elect to remove any Executory Contract from <u>Exhibit B</u>, in which case such Executory Contract shall not be an Assumed Executory Contract; <u>provided</u>, <u>however</u>, any Executory Contract removed from <u>Exhibit B</u> on account of an objection to the proposed assumption by and assignment of such Executory Contract to Purchaser may be subsequently added to <u>Exhibit B</u> and

will be deemed an Assumed Executory Contract once such objection is resolved and such Executory Contract is assumed by and assigned to Purchaser.

(b)     Sellers shall be responsible and liable for, and shall pay all Cure Costs from the Cash Purchase Price (or, in the alternative, shall agree with Purchaser that Purchaser shall pay Cure Costs directly and deduct the amount of such paid Cure Costs from the Cash Purchase Price otherwise payable to Sellers) in accordance with Section 3.2 and Section 3.6.

2.6     Liens and Encumbrances.  Any liens, except for the Permitted Encumbrances, on the Acquired Assets existing as of the Closing Date will attach to the proceeds from the sale of the Acquired Assets according to such liens' relative priorities.

## ARTICLE III.

## CONSIDERATION

3.1     Consideration.   The aggregate consideration (collectively, the "Purchase Price") to be paid for the acquisition of the Acquired Assets shall consist of the following, which shall be payable in accordance with the terms and conditions set forth in this Article III and Article IV: an amount in cash equal to $5,600,000 (the "Cash Purchase Price"), which Cash Purchase Price shall be net of (i) the Deposit provided by Purchaser in accordance with Section 3.4; *plus* (ii) assumption of all other Assumed Liabilities set forth in Exhibit C; *plus* or *minus* (as applicable) (iii) any adjustments for prorations pursuant to Section 4.5.

3.2     Payment of Purchase Price at Closing.   The Purchase Price as described in Section 3.1 shall be satisfied at the Closing, subject to the terms and conditions contained in this Article III and Article IV.

3.3     Assumed Liabilities.   Purchaser shall assume the Assumed Liabilities pursuant to the assignment and assumption agreement substantially in the form attached hereto as Exhibit F (the "Assignment and Assumption Agreement").

3.4     Allocation of Consideration.   Within thirty (30) calendar days after the Closing Date, Purchaser shall deliver to Sellers a statement setting forth the allocation of the Purchase Price among the Acquired Assets.   Purchaser and Sellers shall use commercially reasonable efforts to promptly agree on such allocation of the deemed sales price of the Acquired Assets, in accordance with the allocation requirements of Section 1060 of the Internal Revenue Code (the allocation agreed on by the parties pursuant to this Section, the "Allocation"). If Purchaser and Sellers are unable to agree on the Allocation within twenty (20) days after delivery of the initial allocation, then the Parties shall submit the matter for resolution by the Bankruptcy Court.   Such Allocation shall become part of this Agreement for all purposes.   Sellers and Purchaser agree to report, pursuant to section 1060 of the Internal Revenue Code of 1986 and the regulations promulgated thereunder, if and when required, the Allocation of the Purchase Price, as adjusted, in a manner entirely consistent with such Allocation in the preparation and filing of all Tax Returns (including IRS form 8594).   Neither Sellers nor Purchaser shall take any action that would call into question the bona fide nature of such Allocation; and none of the parties shall

take any position for Tax purposes which is inconsistent with such Allocation, unless required to do so under applicable law. Notwithstanding the foregoing, the Allocation shall not be binding upon any person or entity that is not a party to this Agreement

3.5 _Deposit_. Purchaser has provided the Deposit in good faith. If the Closing occurs, the Deposit shall be paid to Sellers and applied against the Cash Purchase Price at the Closing as described in _Section 3.2_. If the Closing does not occur, then the Deposit shall be disbursed as follows: (i) in the event of a termination of this Agreement for any reason other than breach by Purchaser as a result of Purchaser's failure to perform its obligations at Closing notwithstanding that all conditions to such performance have been satisfied, the Deposit shall be returned to Purchaser; or (ii) in the event of a termination of this Agreement and the Deposit has not been disbursed in accordance with clauses (i) or (ii) of this _Section 3.5_, then the Deposit shall be disbursed as any court of competent jurisdiction may direct. Purchaser and Sellers shall cooperate to select or establish an account designated to hold the Deposit prior to its disbursement, and to implement the provisions of this _Section 3.5_.

3.6 _Alteration and Amendment of Exhibits; Cure Costs_. Notwithstanding anything to the contrary contained in this Agreement, Purchaser may, by notice to Sellers, at any time on or before the Closing Date, in its sole discretion: (a) alter or amend _Exhibit A_ to this Agreement by removing an Acquired Asset, and (b) add any Executory Contract to _Exhibit B_ to this Agreement, _provided_, _however_, Sellers or Purchaser (as determined in accordance with _Section 2.5(b)_ hereof) shall pay the Cure Costs associated with all Assumed Executory Contracts listed on _Exhibit B_ as of the Closing Date up to an aggregate amount not to exceed $1,000,000; _provided_, _further_, to the extent an objection is filed by the Closing Date to the Notice of Proposed Assumed Executory Contracts concerning an Executory Contract listed on _Exhibit B_ as of the Closing Date, such Executory Contract may be removed from _Exhibit B_ on the Closing Date and Purchaser shall not be obligated to pay any Cure Costs in respect of such Executory Contract unless and until such objection is resolved and such Executory Contract is assumed by and assigned to Purchaser, subject to the limitation Purchaser's liability on aggregate Cure Costs set forth above in _Section 3.6(b)_. Subject to _Section 9.5_, the Exhibits to this Agreement, as they may have been amended by Purchaser in accordance with the immediately preceding sentence or as otherwise permitted by this Agreement, shall constitute the Exhibits as of any applicable date.

## ARTICLE IV.

## CLOSING AND TERMINATION

4.1 _Closing_. Provided that the conditions to closing set forth herein have been satisfied or, if waivable, have been waived in accordance herewith, the closing of the transactions contemplated herein (the "_Closing_") shall be held at such place as agreed to between Purchaser and Sellers, within three (3) calendar days following the first day that all such conditions have been satisfied or, if waivable, waived, on a Business Day mutually agreeable to Purchaser and Sellers. The date on which the Closing occurs in accordance with the previous sentence is referred to as the "_Closing Date_". Unless otherwise agreed by the parties in writing, the Closing shall be deemed effective and all right, title and interest of Sellers in the Acquired Assets to be acquired by Purchaser hereunder shall be considered to have passed to Purchaser

and the assumption of all of the Assumed Liabilities shall be considered to have occurred as of 12:01 a.m. Pacific Time on the Closing Date.

4.2     Conveyances at Closing.   At the Closing, Sellers and Purchaser shall take the following actions:

(a)     Purchaser shall pay to Sellers, by wire transfer to one or more accounts designated by Sellers, in immediately available funds, the Purchase Price as set forth in Section 3.1, less any net amount owing by Sellers pursuant to Section 4.5 of this Agreement;

(b)     Sellers shall deliver to Purchaser possession of the Acquired Assets;

(c)     Sellers shall deliver to Purchaser a duly executed bill of sale with respect to the Acquired Assets, substantially in the form attached hereto as Exhibit E (the "Bill of Sale") and any other documents described in Section 8.3 hereof, to the extent not already delivered;

(d)     Sellers shall deliver to Purchaser a duly executed bargain and sale deed with respect to the real estate comprising part of the Acquired Assets, in a form to be mutually agreed upon by the parties on or before August 20, 2018 (the "Bargain and Sale Deed");

(e)     Sellers shall provide to Purchaser all such other duly executed instruments as Purchaser may reasonably require to effectuate the transfer, assignment and conveyance of the Acquired Assets, including the Acquired Property;

(f)     Sellers shall deliver to Purchaser a duly executed consent by First Business Capital Corp., as mortgagee of the Acquired Property, in a form acceptable to Purchaser, that approves the sale of the Acquired Property free and clear of all Encumbrances, including any Encumbrances or interests First Business Capital Corp. has with respect to the Acquired Property;

(g)     Sellers shall execute and deliver to Purchaser the Assignment and Assumption Agreement with respect to the Assumed Liabilities;

(h)     Sellers shall execute and deliver to Purchaser a trademark assignment for each registered Trademark of Sellers, in a form to be mutually agreed upon by the parties on or before August 20, 2018; and

(i)     Sellers and Purchaser shall enter into and execute a transition services agreement, in a form to be mutually agreed upon by the parties on or before August 20, 2018.

4.3     Additional Deliveries.   After the Closing Date, Sellers shall deliver to Purchaser such other instruments and documents, and shall take such other actions, as shall be reasonably

requested by Purchaser to vest in Purchaser all of Sellers' right, title and interest in and to the Acquired Assets and otherwise to effectuate the transactions described herein.

4.4     Transaction Expenses.  Except as expressly provided herein in respect of the Expense Reimbursement (to the extent due and owing), each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated by this Agreement.

4.5     Prorations.  To the extent there are obligations in respect of the Acquired Assets that arose during or relate to the period up to and including the Closing Date ("Pre-Closing Obligations") and obligations that arose during or relate to the period following the Closing Date, including any and all real or personal property tax obligations ("Post-Closing Obligations"), Purchaser and Sellers shall allocate such obligations between themselves on a ratable basis that fairly reflects the portions (up to 100%) of such obligations that are Pre-Closing Obligations and that shall be paid by Sellers, and the portions (up to 100%) of such obligations that are Post-Closing Obligations and that shall be paid by Purchaser.  To the extent that any net amount is owing to Purchaser or Sellers, as the case may be under this Section 4.5 as of the Closing, the Purchase Price shall be decreased or increased, as the case may be, to the extent such prorations are identified as of the Closing, and to the extent such prorations cannot or are not identified until after the Closing, then any net amount owing to Sellers or Purchaser shall be paid by the party owing such amount.  Any net amount owing to Purchaser under this Section 4.5, shall be an administrative expense of Sellers' bankruptcy estate under section 503(b) and section 507(a)(2) of the Bankruptcy Code.

4.6     Termination of Agreement.  This Agreement may be terminated at any time prior to the Closing as follows:

(a)     by the mutual written consent of Sellers and Purchaser;

(b)     by Sellers, upon or immediately prior to the consummation of an Alternative Transaction as a result of any auction conducted in accordance with the Bidding Procedures, but only if Sellers perform their obligations under Section 4.8 and Section 7.2;

(c)     by either Purchaser or Sellers, if the Closing shall not have been consummated prior to September 28, 2018 (the "Outside Date"); provided, that if the Closing shall not have occurred on or before the Outside Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser or Sellers, then Purchaser (if Purchaser is in breach) or Sellers (if Sellers are so in breach), respectively, may not terminate this Agreement pursuant to this Section 4.6(c);

(d)     by either Purchaser or Sellers, if (a) the Bidding Procedures Order has not been entered by the Bankruptcy Court, or if the Stalking Horse Provisions have not been approved by the Bankruptcy Court by the close of business on August 27, 2018 (b) the Bidding Procedures Order has been appealed, withdrawn, revoked, rescinded, or

modified, or (c) the Bidding Procedures Order has not become a final, non-appealable order within fifteen (15) calendar days following the date on which it was entered;

(e) by either Purchaser or Sellers, if there shall be any Law that makes consummation of the transactions contemplated hereby illegal or otherwise prohibited, or there shall be in effect a final non-appealable order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; it being agreed that the parties hereto shall promptly appeal any such adverse determination which is appealable (and pursue such appeal with reasonable diligence);

(f) by Purchaser, if the Cure Cost with respect to each of the Assumed Executory Contracts has not been determined within the earlier of two (2) Business Days prior to the Closing Date and fourteen (14) days after the entry of the Bidding Procedures Order;

(g) by Purchaser if either or both of the Chapter 11 Cases are dismissed or converted to a case or cases under Chapter 7 of the Bankruptcy Code;

(h) by Purchaser, if (i) the Sale Order shall not have been entered by the Bankruptcy Court by the close of business on September 24, 2018 or (ii) the Sale Order has been appealed, withdrawn, revoked, rescinded, modified or amended in any material respect without the prior written consent of Purchaser and Sellers;

(i) by Sellers, if Purchaser fails to satisfy any of their material obligations at Closing

(j) by Purchaser, if the Cure Costs of the Assumed Executory Contracts exceed in the aggregate $1,000,000.00; or

(k) by Purchaser, if Sellers are in breach of any of their material obligations hereunder and, to the extent such breach is reasonably capable of cure within such period, such breach has not been cured by Sellers within five (5) calendar days after written notification by Purchaser.

4.7     Procedure Upon Termination.  In the event of a termination of this Agreement by Purchaser or Sellers, or both, (a) written notice thereof shall be given promptly by the terminating party to the other party or parties hereto, specifying the provision hereof pursuant to which such termination is made, (b) this Agreement shall thereupon terminate and become void and of no further force and effect, and (c) the consummation of the transactions contemplated by this Agreement shall be abandoned without further action of the parties hereto.   If this Agreement is terminated as provided herein, all parties shall return all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

4.8     Effect of Termination.  In the event that this Agreement is validly terminated pursuant to a right of termination as provided herein, all of the parties shall be relieved of their duties and obligations arising under this Agreement effective as of the date of such termination

and such termination shall be without Liability to Purchaser or Sellers; provided, however, that Section 4.6, Section 4.7 and this Section 4.8, and Section 7.2 hereof, and any other provisions hereof necessary to implement the provisions of such sections, shall survive any such termination and shall be enforceable hereunder. In no event shall any termination of this Agreement relieve any party hereto of any Liability for any willful breach of this Agreement by such party. For avoidance of doubt, upon termination of this Agreement, (a) the Deposit shall be delivered to any applicable party as provided in Section 3.4 and (b) Purchaser shall be entitled to the Stalking Horse Provisions to the extent set forth in Section 7.2.

4.9     Access to Records; Assistance After Closing. For a period of three (3) years following the Closing, the Parties shall cooperate with each other, and afford the other Party with reasonable access to the financial and tax records related to the Acquired Assets and the Business. Such assistance shall include, but is not limited to, Sellers requesting administrative and accounting assistance from employees hired by Purchaser pursuant to this Agreement. The Party providing employee assistance may charge the Party requesting assistance for any actual out-of-pocket costs or expenses incurred by it in rendering assistance. Such charges for employee time shall be charged at the respective employees' annual compensation rates, including benefits, calculated over a 2080 working hour year.

## ARTICLE V.

## REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers, on a joint and several basis, make the following representations and warranties to Purchaser:

5.1     Organization and Power. Sunshine Dairy Foods Management, LLC is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Oregon and Karamanos Holdings, Inc. is a corporation duly organized, validly existing and in good standing under the Laws of the State of Oregon. Sellers have all requisite power and authority to own the Acquired Assets.

5.2     Corporate Authorization. Subject to entry of the Sale Order, Sellers have full corporate power and authority to execute and deliver any and all Transaction Documents and to perform the obligations thereunder. Subject to entry of the Sale Order, the execution, delivery and performance of Sellers of the Transaction Documents have been duly and validly authorized and no additional corporate authorization or consent is required in connection therewith.

5.3     Binding Effect. Subject to entry of the Sale Order, this Agreement has been duly executed and delivered by Sellers. This Agreement, when executed and delivered by Purchaser, and the other Transaction Documents when executed and delivered, will, upon the entry of the Sale Order, constitute the valid and legally binding obligations of Sellers, enforceable against Sellers jointly and severally in accordance with their respective terms.

5.4     Ownership of Acquired Assets. Sellers own all Acquired Assets and have the right to transfer the Acquired Assets to Purchaser, in each case, effective at Closing free and clear of any Encumbrances, except for the Permitted Encumbrances.

5.5 <u>Real Property</u>. With respect to the Acquired Property, except as otherwise disclosed in writing by the Sellers to the Purchaser, there are no violations of local zoning or other Laws, no litigation pending or threatened, no pending extraordinary assessments or impositions of levies by any Governmental Body, and no unperformed obligations that are currently required by any Governmental Body, nor any hazardous substance waste or material within or on the Acquired Property.

5.6 <u>Finders' Fees</u>. Except for Boverman & Associates, LLC, the fees and expenses of which will be paid by Sellers, there is no investment banker, broker, finder or other intermediary who has been retained by or is authorized to act on behalf of Sellers who might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement.

5.7 <u>No Other Representations or Warranties</u>. Except for the representations and warranties expressly contained herein, Sellers make no other express or implied representation or warranty. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE ACQUIRED ASSETS ARE ASSIGNED, "AS IS," WITHOUT ANY WARRANTY OF ANY KIND, AND SELLERS HEREBY EXPRESSLY DISCLAIMS, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL CONDITIONS OR WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTIES OF OR RELATED TO TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, VALIDITY OR ENFORCEABILITY.

## ARTICLE VI.

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser makes the following representation and warranties to Sellers:

6.1 <u>Organization and Power</u>. Purchaser is a corporation duly organized, validly existing and in good standing under the Laws of the State of Delaware.

6.2 <u>Authorization</u>. Purchaser has full power and authority to execute and deliver the Transaction Documents and to perform its obligations thereunder. The execution, delivery and performance by Purchaser of the Transaction Documents have been duly and validly authorized and no additional authorization or consent is required in connection therewith.

6.3 <u>Binding Effect</u>. This Agreement has been duly executed and delivered by Purchaser. This Agreement, when executed and delivered by Sellers, and the other Transaction Documents when executed and delivered, will constitute the valid and legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar Laws of general applicability relating to or affecting creditors' rights and to general equity principles.

6.4 <u>Funding</u>. Purchaser has, or will have as of the Closing, without the need to obtain any Third Party debt or equity financing, sufficient and unencumbered funds to consummate the transactions contemplated by this Agreement and to pay the Purchase Price, and Purchaser

otherwise has the resources and capabilities (financial and otherwise) to perform its obligations to consummate the transactions contemplated by this Agreement.

6.5     Adequate Assurances Regarding Assumed Executory Contracts.     As of the Closing, Purchaser will be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assumed Executory Contracts.

6.6     Finders' Fees.     There is no investment banker, broker, finder or other intermediary who has been retained by or is authorized to act on behalf of Purchaser or any Affiliate of Purchaser who might be entitled to any fee or commission in connection with the transactions contemplated by this Agreement, except for any fee or commission paid directly by Purchaser and not reducing the Purchase Price in any way.

6.7     Good Faith Purchaser.     Purchaser (i) is a "good faith" purchaser, as such term is used in the Bankruptcy Code, and (ii) is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the transactions contemplated by this Agreement.     Purchaser has negotiated and entered into this Agreement in compliance with the Bidding Procedures, in compliance with section 363(n) of the Bankruptcy Code, and in good faith and without collusion or fraud of any kind.

6.8     Purchaser Experience.     Purchaser is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement.     In consultation with experienced counsel and advisors of its choice, Purchaser has conducted its own independent review and analysis of the Acquired Assets, the Assumed Liabilities and the rights and obligations it is acquiring and assuming under the Transaction Documents.     Purchaser acknowledges that it and its representatives have been permitted such access to the books and records, contracts and other properties related to the Acquired Assets as it required to complete its review.

## ARTICLE VII.

## CERTAIN COVENANTS

7.1     Bankruptcy Sale Process.

(a)     Sellers will, as soon as practicable, file with the Bankruptcy Court the Sale Motion upon the parties required to be served by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, and shall seek consideration of the Sale Motion by the Bankruptcy Court.     Purchaser acknowledges that the Acquired Assets may be subject to competitive bidding and that the Bidding Procedures may be supplemented by other customary procedures consistent with the terms of this Agreement, provided that the Bidding Procedures may not be amended, modified, or supplemented in any respect except as provided for in the Bidding Procedures.

(b)     Sellers will, as promptly as possible, but in all events in accordance with the Bidding Procedures, file and serve the Notice of Proposed Assumed Executory Contracts and the Final Sale Notice, together with the proposed Sale Order and a copy of the Transaction Documents (with any redactions Sellers and Purchaser

mutually deem appropriate in accordance with Bankruptcy Rule 9018 and the Bidding Procedures Order), upon the parties required to be served in accordance with the Bidding Procedures.

(c)     Sellers will, subject to the provisions of this Agreement and the Bidding Procedures Order, in consultation with Purchaser, use its reasonable best efforts to (x) respond to and resolve all timely objections to the entry of the Sale Order and (y) obtain entry of the Sale Order on or before September 24, 2018.

(d)     Purchaser will use its reasonable best efforts to assist in obtaining entry of the Sale Order, including furnishing or filing with the Bankruptcy Court such affidavits or declarations as Sellers may request for the purpose of obtaining entry of the Sale Order.

(e)     Purchaser shall not, without prior written consent of Sellers, file, join in, or otherwise support or encourage in any manner whatsoever any motion or other pleading relating to the sale of the Acquired Assets hereunder.

(f)     In the event that an appeal is taken or a stay pending appeal is requested with respect to the Sale Order, Sellers shall promptly notify Purchaser of such appeal or stay request and shall promptly provide to Purchaser a copy of the related notice(s) or order(s).   Sellers and Purchaser shall use their reasonable best efforts to defend any such appeal or stay request.

7.2     Stalking Horse Provisions.

(a)     In the event Sellers receive a bid, in accordance with the Bidding Procedures, to consummate an Alternative Transaction with a third-party bidder on terms that include a cash purchase price, payable at closing, of an amount at least $250,000 greater than the sum of (x) the Cash Purchase Price *plus* (y) the Break Fee *plus* (z) the maximum amount of the Expense Reimbursement, and which terms are otherwise substantially the same as, or more favorable to Sellers than the terms set forth in this Agreement, Purchaser shall consent to the sale of the Acquired Assets to such third-party bidder.

(b)     In the event Sellers enter into an agreement to consummate or consummate an Alternative Transaction, Sellers shall pay Purchaser, in accordance with the Bidding Procedures and by wire transfer to an account designated by Purchaser on the closing date of such Alternative Transaction, (i) the Break Fee and (ii) the reimbursement of all reasonable costs and expenses of Purchaser incurred in connection with Purchaser's efforts to negotiate and consummate the transactions contemplated by this Agreement (including, without limitation, the fees and expenses of counsel), but such reimbursement shall be capped at $75,000 (the "Expense Reimbursement").

(c)     The Break Fee and Expense Reimbursement shall be paid from any proceeds of an Alternative Transaction, otherwise payable to Sellers, provided that if such amounts are not paid from such proceeds, Sellers shall remain liable for such amounts.  Sellers shall have no liability with respect to Purchaser or any other person for

an amount exceeding the aggregate of the Break Fee *plus* the Expense Reimbursement in the event that this Agreement is terminated by Sellers pursuant to <u>Section 4.6(h)</u>.

(d)    The Break Fee and Expense Reimbursement (to the extent due and owing) shall be first-priority administrative expenses of Sellers' bankruptcy estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

(e)    The obligation of Sellers to pay, and the payment by Sellers of, the Expense Reimbursement (to the extent due and owing), shall in no way limit or otherwise affect the rights of Purchaser to a return of the Deposit, including without limitation the rights of Purchaser under <u>Section 3.4</u> of this Agreement.

(f)    Sellers acknowledge and agree that Purchaser would not have entered into this Agreement but for the provisions in this <u>Section 7.2</u>, and that the provisions of this <u>Section 7.2</u> are integral to, and shall survive any termination of, this Agreement.

7.3    <u>Pre-Closing Operating Covenants of Sellers</u>.

(a)    During the period from the date hereof until the earlier of Closing or the termination of this Agreement in accordance with <u>Section 4.6</u>, <u>Section 4.7</u> and <u>Section 4.8</u>, except as expressly provided in this Agreement, or as required by Law, subject to the limitations of the Bankruptcy Code and the Bankruptcy Rules, without the prior written consent of Purchaser, Sellers will not:

(i)    sell or transfer or create any Encumbrance upon any of the Acquired Assets;

(ii)    fail to pay any fees or expenses by the due date therefor with respect to any of the Acquired Assets and necessary to maintain the existing status and condition of the same, absent Purchaser's written authorization after good faith consideration;

(iii)    reject, cancel, terminate, amend, modify, supplement or rescind any Assumed Executory Contract or any terms of any Assumed Executory Contract without the express written approval of Purchaser, which shall not be unreasonably withheld or delayed, except for the purpose of effecting any changes in applicable Law or implementing regulatory requirements;

(iv)    enter into any new Contract or renew any existing Contract requiring payments by Sellers;

(v)    conduct or fail to conduct any operation related to the Acquired Property outside the ordinary course of business;

(vi)    cease or limit operations at the Acquired Property;

(vii)    terminate any employees listed in <u>Exhibit B</u>;

(viii) incur any long-term expenditure associated with the Acquired Assets that would be an Assumed Liability;

(ix) transfer, sell, assign, abandon, permit to lapse or grant any rights or modify any existing rights to the Acquired Assets, or enter into any settlement regarding the breach or infringement, misappropriation, dilution or other violation of, or challenge the title to, any such Acquired Assets; or

(x) institute, settle or agree to settle or modify in any manner that is adverse to the Acquired Assets, any litigation, action or other Legal Proceeding before any court or Governmental Body relating to the Acquired Assets and that is or will be an Assumed Liability.

(b) Concurrent with Closing, Sellers will prepare and file with the appropriate Governmental Body appropriate documents, including, but not limited to, articles of amendment or changing Sellers' names so as to effectuate the transfer of the Acquired Assets.

7.4     Access to Information.

(a) Sellers agree that, between the Execution Date and the earlier of the Closing Date and the date on which this Agreement is terminated in accordance with Section 4.6, Purchaser shall be entitled, through its officers, employees, counsel, accountants and other authorized representatives, agents and contractors ("Representatives"), to have such reasonable access to and make such reasonable investigation and examination of the books and records, Documents, properties, businesses, assets, accountants, auditors, counsel and operations of Sellers as Purchaser's Representatives may reasonably request, provided, however, that Sellers shall not be obligated to provide information that they are not permitted to provide under applicable Law. Any such investigations and examinations shall be conducted during regular business hours upon reasonable advance notice and under reasonable circumstances, including Sellers' right to have their Representatives accompany Purchaser and its Representatives at the time of any on-site inspection or examination and shall be subject to restrictions under applicable Law. Pursuant to this Section 7.4, Sellers shall furnish to Purchaser and its Representatives such financial, operating and property related data and other information as such Persons reasonably request. Sellers shall use commercially reasonable efforts to cause their Representatives to reasonably cooperate with Purchaser and Purchaser's Representatives in connection with such investigations and examinations, and Purchaser shall, and use its commercially reasonably efforts to cause its Representatives to, reasonably cooperate with Sellers and their Representatives and shall use their reasonable efforts to minimize any disruption to the Business. Purchaser and its Representatives shall be permitted to contact, or engage in discussions or otherwise communicate with Sellers' landlords, clients, suppliers and other Persons with which Sellers have material commercial dealings, provided, that Purchaser must obtain the prior consent of Sellers, which consent shall not be unreasonably withheld or delayed, to initiate such communications and give Sellers the opportunity to be present therefor.

(b)     No information received pursuant to an investigation made under this <u>Section 7.4</u> shall be deemed to (i) qualify, modify, amend or otherwise affect any representations, warranties, covenants or other agreements of Sellers set forth in this Agreement or any certificate or other instrument delivered to Purchaser in connection with the transactions contemplated hereby, (ii) limit or restrict the remedies available to the parties under applicable Law arising out of a breach of this Agreement or otherwise available at Law or in equity, or (iii) limit or restrict the ability of either party to invoke or rely on the conditions to the obligations of the parties to consummate the transactions contemplated by this Agreement set forth in <u>Article VIII</u>.

7.5     <u>Reasonable Efforts; Further Assurances of Each Party</u>.  During the period from the date hereof until the earlier of Closing or the termination of the Agreement in accordance with <u>Section 4.6</u>, <u>Section 4.7</u> and this <u>Section 4.8</u>, in each case, subject to the limitations of the Bankruptcy Code and Bankruptcy Rules:

(a)     each party will use commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable in order to consummate and make effective the transactions contemplated by this Agreement (including satisfaction, but not waiver, of the closing conditions set forth in <u>Article VIII</u>; and

(b)     the parties will execute and deliver any documents, instruments or conveyances of any kind and take all other actions which may be reasonably necessary or advisable to carry out the intent of this Agreement and the transactions contemplated herein.

7.6     <u>Regulatory Affairs</u>.  Sellers shall, to the fullest extent permitted by applicable Law, (i) promptly advise Purchaser of the receipt of any communication from any state or foreign Governmental Body or other U.S. Governmental Body whether oral, written, electronic or otherwise, (ii) provide Purchaser with a reasonable opportunity to participate in the preparation of any response thereto and the preparation of any other substantive submission or communication to any such Governmental Body and to review any such response, submission or communication prior to the filing or delivery thereof, and (iii) provide Purchaser with the opportunity to participate in any meetings or substantive telephone conversations that Sellers or their Representatives may have from time to time with any such Governmental Body.  At Purchaser's request, Sellers shall assist Purchaser in obtaining any meetings with, or facilitating communications between, Purchaser and any state or foreign Governmental Body or other U.S. Governmental Body.

## ARTICLE VIII.

## CONDITIONS TO CLOSING

8.1     <u>Conditions Precedent to the Obligations of Sellers and Purchaser</u>.  The respective obligations of each party to this Agreement to consummate the transactions contemplated herein are subject to the satisfaction or written waiver, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Sellers and Purchaser in whole or in part to the extent permitted by applicable Law):

(a)    there shall not be in effect any statute, rule, regulation, Law or Order enacted, issued, entered or promulgated by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(b)    the Bankruptcy Court shall have entered the Bidding Procedures Order and such order shall be a Final Order and in form and substance reasonably satisfactory to Purchaser and shall be final and non-appealable, and shall not have been stayed, appealed, withdrawn or vacated;

(c)    the Bankruptcy Court shall have entered the Sale Order and such order shall be a Final Order and in form and substance reasonably satisfactory to Purchaser and shall be final and non-appealable, and shall not have been stayed, appealed, withdrawn or vacated; and

(d)    there shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of the transactions contemplated by this Agreement.

8.2    Conditions Precedent to the Obligations of Sellers.  The obligations of Sellers to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Sellers in whole or in part to the extent permitted by applicable Law):

(a)    Covenants and Representations.  Purchaser shall have performed in all material respects all agreements and covenants required hereby to be performed by Purchaser prior to or at the Closing Date, and the representations and warranties of Purchaser made in Article VI shall be correct and complete in all material respects as of the Closing Date as if made on such date;

(b)    Purchase Price.  On or prior to the Closing Date, Purchaser shall have paid the Purchase Price; and

(c)    Deliveries.  On or prior to the Closing Date, Purchaser shall have delivered to Sellers each of the items set forth in Section 4.2 of this Agreement.

8.3    Conditions Precedent to the Obligations of Purchaser.   The obligations of Purchaser to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived in writing by Purchaser in whole or in part to the extent permitted by applicable Law):

(a)    Covenants and Representations.  Sellers shall have performed in all material respects all agreements and covenants required hereby to be performed by Sellers prior to or at the Closing Date, and the representations and warranties of Sellers in Article V shall be correct and complete in all material respects as of the Closing Date as if made on such date;

(b)    <u>Deliveries</u>.  On or prior to the Closing Date, Sellers shall have delivered to Purchaser each of the items set forth in <u>Section 4.2</u> of this Agreement;

(c)    <u>Taxes</u>. On or prior to the Closing Date, Sellers shall have paid, or made arrangements to pay, all property Taxes on the Acquired Property due or assessed prior to the Closing Date, excluding any Transfer Taxes;

(d)    <u>Consents</u>. On or prior to the Closing Date, Sellers shall have received, in a form reasonably acceptable to Purchaser, all consents necessary to assign the Assumed Executory Contracts;

(e)    <u>Employees</u>. On or prior to the Closing Date, no fewer than (i) five (5) of the Key Employees and (ii) a majority of the Other Employees shall have accepted employment with Purchaser on terms and conditions satisfactory to Purchaser; and

(f)    <u>Permits and Licenses</u>.  All of the Permits and licenses necessary for Purchaser to acquire the Acquired Assets, and assume the Assumed Liabilities, shall have been obtained, and all such consents, Permits and licenses shall be in full force and effect.

## ARTICLE IX.

## MISCELLANEOUS

9.1    <u>Transfer Taxes</u>.  Any sales, use, transfer, deed, fixed asset, stamp, documentary stamp or other similar type Taxes and recording charges (each, a "<u>Transfer Tax</u>") which may be payable by reason of the acquisition of the Acquired Assets or the assumption of the Assumed Liabilities under this Agreement or the transactions contemplated herein shall be timely paid by Purchaser.  Purchaser and Sellers shall cooperate to prepare and timely file any Tax Returns required to be filed in connection with Transfer Taxes described in the immediately preceding sentence.

9.2    <u>Releases</u>.  Effective as of and conditioned upon the occurrence of Closing, Purchaser hereby releases and forever discharges Sellers and Sellers' directors, officers, employees, agents, representatives, successors, assigns, and holders of Claims or interests in Sellers' chapter 11 bankruptcy estate, from any and all actions, suits, debts, liens, sums of money, accounts, judgments, claims and demands whatsoever, at law or in equity, either in contract or in tort, whether known or unknown, on account of, arising out of or relating to any act or omission of any kind or character whatsoever that relates to Sellers or this Agreement and the proposed transactions contemplated herein occurring at or prior to the Closing; <u>provided</u> that nothing in this <u>Section 9.2</u> shall release or discharge any Claim of Purchaser under this Agreement.

9.3    <u>Survival</u>.  Except as expressly provided for herein, none of the (a) covenants or agreements to be performed by either Sellers or Purchaser prior to the Closing pursuant to this Agreement and (b) representations and warranties by Sellers or Purchaser contained in this Agreement shall survive Closing, and neither Sellers nor Purchaser shall have liability to the other party after Closing for any breach of any such covenant, agreement, representation or

warranty. Except as set forth in the immediately preceding sentence, the covenants and agreements of the parties set forth in this Agreement will survive until fully performed or until such performance is expressly waived in writing by Purchaser (in the case of covenants and agreements of Sellers) or Sellers ((in the case of covenants and agreements of Purchaser).

9.4     <u>Injunctive Relief</u>.  Damages at Law may be an inadequate remedy for the breach by Purchaser or Sellers of any of their covenants, promises and agreements contained in this Agreement and, accordingly, each of Purchaser and Sellers shall be entitled to injunctive relief with respect to any such breach, including specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement.  The rights of Purchaser and Sellers set forth in this <u>Section 9.4</u> shall be in addition to any other rights which a party may have at Law or in equity pursuant to this Agreement.

9.5     <u>Entire Agreement; Amendments and Waivers</u>.  This Agreement (including the Exhibits hereto and other documents specifically referred to herein) represents the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties.  Any provision of this Agreement may be amended or waived if such amendment or waiver is in writing and signed, in the case of an amendment, by Purchaser and Sellers, or in the case of a waiver, by the party against whom the waiver is effective.  No failure or delay by a party in exercising any right, power or privilege hereunder will operate as a waiver thereof nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies provided herein will be cumulative and, except as otherwise expressly provided herein, are not exclusive of any rights or remedies provided by applicable Law.

9.6     <u>Counterparts; Electronic Signatures</u>.  For the convenience of the parties hereto, this Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.  Facsimile signatures or signatures delivered by email in PDF or similar format will be deemed original signatures for purposes of this Agreement.

9.7     <u>Governing Law</u>.  This Agreement will be governed by and construed in accordance with the Laws of the State of Oregon without regard to principles of conflicts of Law.  The parties hereby submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Oregon (the "<u>Bankruptcy Court</u>") and any U.S. federal appellate court therefrom (or, if the United States Bankruptcy Court for the District of Oregon declines to or may not accept authority or jurisdiction over a particular matter, the United States District Court for the District of Oregon; or if the United States District Court for the District of Oregon declines to or may not accept jurisdiction over a particular matter, any state court within Multnomah County of the State of Oregon) for any actions, suits or proceedings arising out of or relating to this Agreement or the transactions contemplated herein (and each party agrees not to commence any action, suit or proceeding relating thereto except in such courts), and each party further agrees that service of any process, summons, notice or document by U.S. registered mail to its respective address set forth in <u>Section 9.9</u> shall be effective service of process for any action, suit or proceeding brought against it in any such court.

9.8 <u>Waiver of Jury Trial</u>. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

9.9 <u>Notices</u>. Unless otherwise set forth herein, any notice, request, instruction or other document to be given hereunder by any party to the other parties shall be in writing and shall be deemed duly given (i) upon delivery, when delivered personally, (ii) one (1) day after being sent by overnight courier or when sent by facsimile transmission or email PDF format (with a confirming copy sent by overnight courier), and (iii) three (3) calendar days after being sent by registered or certified mail, postage prepaid, as follows:

If to Sellers, to:

> Sunshine Dairy Foods Management, LLC
> c/o Boverman and Associates, LLC
> 11285 SW Walker Rd.
> Portland, OR 97225
> Attention: Dan Boverman
> Email: danboverman@boverman.biz

> And

> Karamanos Holdings, Inc
> c/o Boverman and Associates, LLC
> 11285 SW Walker Rd.
> Portland, OR 97225
> Attention: Dan Boverman
> Email: danboverman@boverman.biz

With copies to:

> Motschenbacher & Blattner LLP
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204
> Attention: Nicholas J. Henderson
> Email: nhnderson@portlaw.com

> Vanden Bos & Chapman, LLP
> 319 SW Washington, Suite 520
> Portland, OR 97204
> Attention: Douglas R. Ricks
> Email: doug@vbcattorneys.com

> Norman Davidson, III
> Attorney at Law

630 West Duarte Road, #208
Arcadia, California 91007
Attention: Norman Davidson III
Email: nick@normandavidsonlaw.com




If to Purchaser, to:

Lyrical Foods, Inc.
3180 Corporate Place
Hayward, CA 94545
Attn: Chief Executive Office
Email: rob@kite-hill.com


With copies to:

Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA 94304
Attention: Eric Hanson
Email: eric.hanson@wilmerhale.com

and
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
New York, New York 10007
Attention: George Shuster and Benjamin Loveland
Email: george.shuster@wilmerhale.com

or to such other Persons or addresses as may be designated in writing by the party to receive such notice.

9.10    Binding Effect; Assignment.    This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.    Nothing in this Agreement will create or be deemed to create any Third Party beneficiary rights in any Person or entity not a party to this Agreement.    None of the parties may assign or delegate its rights or obligations under this Agreement (whether by operation of Law, change of control, or otherwise), either in whole or in part, without the prior written consent of the other party, provided, however, that Purchaser may assign, delegate or transfer any of its rights or obligations under this Agreement to any wholly-owned direct or indirect Subsidiary of Purchaser by sending written notice to, but without the consent of, Sellers; provided, further, that such assignment, delegation or transfer shall not relieve Purchaser of any liability or obligation under this

Agreement. Any attempted assignment, delegation or transfer in violation of this <u>Section 9.10</u> shall be void and without effect.

9.11 <u>Third Party Beneficiaries</u>. No Person other than the parties hereto (and any permitted assignee under <u>Section 9.10</u>) shall have any rights or claims under this Agreement.

9.12 <u>Publicity</u>. Except as required by law or the Bankruptcy Court, neither Sellers nor Purchaser will issue any press release or make any public statement regarding the transactions contemplated hereby, without the prior written consent of the other party.

9.13 <u>Severability</u>. If any provision of this Agreement is determined to be invalid or unenforceable, the validity or enforceability of the other provisions of this Agreement as a whole will not be affected; and, in such event, Sellers and Purchaser shall negotiate in good faith to change and interpret such provision so as to best accomplish the objectives of such provision within the limits of applicable Law or applicable court decision.

9.14 <u>Time of the Essence</u>. Time is of the essence in the performance of each of the obligations of the parties and with respect to all covenants and conditions to be satisfied by the parties in this Agreement and all documents, acknowledgments and instruments delivered in connection herewith.

9.15 <u>Obligations of Parties</u>. If more than one person or entity is named as a Seller, the term "<u>Sellers</u>" shall refer to each person or entity so named and any one or more of them in any combination, and the representations, warranties, covenants, obligations and liabilities of Sellers herein shall constitute their joint and several representations, warranties, covenants, obligations and liabilities, except as otherwise specifically provided herein.

9.16 <u>Miscellaneous</u>.

(a) <u>Certain Interpretations</u>. Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

(i) All references in this Agreement to Articles, Sections, Schedules and Exhibits shall be deemed to refer to Articles, Sections, Schedules and Exhibits to this Agreement.

(ii) All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(iii) The Article, Section and paragraph captions herein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof.

(iv) The words "include," "includes" and "including," when used herein, shall be deemed in each case to be followed by the words "without limitation" (regardless of whether such words or similar words actually appear).

(v)     When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.

(vi)     Any reference in this Agreement to $ shall mean United States Dollars.

(vii)     Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

(viii)     The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(b)     The parties hereto agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any Law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

(c)     This Agreement is the result of the joint efforts of the parties hereto, and each provision hereof has been subject to the mutual consultation, negotiation, and agreement of the parties and there is to be no construction against any party based on any presumption of that party's involvement in the drafting thereof.

(d)     Purchaser acknowledges hereby that Sellers may not comply with the provisions of any bulk transfer laws of any jurisdiction in connection with the transactions contemplated by this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**SELLERS:**

**SUNSHINE DAIRY FOODS MANAGEMENT, LLC**

By: _____

    Name:   Daniel J. Boverman
    Title:    Chief Restructuring Officer

**KARAMANOS HOLDINGS, INC.**

By: _____

    Name:   Daniel J. Boverman
    Title:    Chief Restructuring Officer

DocuSign Envelope ID: 98BD549C-CDAC-4ADF-89E0-874A7C25E0BD

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**PURCHASER:**

**LYRICAL FOODS, INC.**

By: _Rob Leibowitz_____
    Name:  Rob Leibowitz
    Title:   CEO

## EXHIBIT A

## Acquired Assets

All assets at or relating to the operation of the Business, including, but not limited to:

| Item # | Description | Location |
|--------|-------------|----------|
| 1 | Acquired Property (fee simple real property interest) | 8440 NE Halsey Street, Portland, OR 97220 |
| 2 | Active Inventories (Not excess or obsolete) | Acquired Property |
| 3 | Office Supplies | Acquired Property |
| 4 | Equipment (as listed below) | Acquired Property |
| 5 | Furniture and Fixtures | Acquired Property |
| 6 | Documents and Data | Acquired Property |
| 7 | Cabinetry | Acquired Property |
| 8 | Chemicals and Production Supplies | Acquired Property |
| 9 | Signage | Acquired Property |
| 10 | All Intellectual Property of the Sellers | N/A |

| Equipment | | |
|--------|-------------|----------|
| Item # | Description | Location |
| 1 | Boiler | Acquired Property |
| 2 | Air Compressor | Acquired Property |
| 3 | Air Compressor | Acquired Property |
| 4 | Ammonia Room Equipment | Acquired Property |
| 5 | (4) Tank Mix System | Acquired Property |
| 6 | (3) Tank Mix System | Acquired Property |
| 7 | Osgood Filler (Some Repair Needed) | Acquired Property |

| 8 | Osgood Filler (Some Repair Needed) | Acquired Property |
|----|-----|-----|
| 9 | Metal Detector | Acquired Property |
| 10 | Domino Coder | Acquired Property |
| 11 | Domino Coder | Acquired Property |
| 12 | Cup Conveyor | Acquired Property |
| 13 | A&F Case Packer | Acquired Property |
| 14 | A&F Case Packer | Acquired Property |
| 15 | Pallet Jack | Acquired Property |
| 16 | Pallet Jack | Acquired Property |
| 17 | Combi | Acquired Property |
| 18 | Case Erector | Acquired Property |
| 19 | Platform Scale | Acquired Property |
| 20 | CIP System | Acquired Property |
| 21 | Metal Detector, Domino Coders, Conveyor On line 1 | Acquired Property |
| 22 | Liquifier | Acquired Property |
| 23 | 5000 Gallon Tank | Acquired Property |
| 24 | 5000 Gallon Tank | Acquired Property |
| 25 | CIP Rinse Tank | Acquired Property |
| 26 | APV Heat Exchanger | Acquired Property |
| 27 | COP Tank | Acquired Property |
| 28 | 1500 Gallon Tank | Acquired Property |
| 29 | 1500 Gallon Tank | Acquired Property |
| 30 | 2000 Gallon Tank | Acquired Property |

| 31 | 2000 Gallon Tank | Acquired Property |
|----|------------------|-------------------|
| 32 | 2000 Gallon Tank | Acquired Property |
| 33 | Pallet Jack | Acquired Property |
| 34 | Lift Truck | Acquired Property |
| 35 | 3000 Gallon Tank | Acquired Property |
| 36 | Homogenizer | Acquired Property |
| 37 | HTST | Acquired Property |
| 38 | Pumps and. Valves for Tanks | Acquired Property |
| 39 | Chiller | Acquired Property |
| 40 | Glycol System | Acquired Property |
| 41 | Scissors Lift | Acquired Property |
| 42 | Lift Truck | Acquired Property |
| 43 | 20000 Silo | Acquired Property |
| 44 | 20000 Silo | Acquired Property |
| 45 | 10000 Gallon Tank | Acquired Property |
| 46 | Piping, Hose, Magnet, Heat Exchanger | Acquired Property |
| 47 | Machine Shop | Acquired Property |
| 48 | Murzan Pump | Acquired Property |
| 49 | Murzan Pump | Acquired Property |
| 50 | Domino Coder | Acquired Property |
| 51 | Domino Coder | Acquired Property |
| 52 | Pick up items | Acquired Property |
| 53 | Lift Truck | Acquired Property |
| 54 | 2100 Gallon Tank: | Acquired Property |

| 55 | 2100 Gallon Tank | Acquired Property |
|----|------------------|-------------------|
| 56 | Square Storage Tank | Acquired Property |
| 57 | 1500 Gallon Tank | Acquired Property |
| 58 | Separator | Acquired Property |
| 59 | Murzan Pump | Acquired Property |
| 60 | Murzan Pump | Acquired Property |
| 61 | DAF | Acquired Property |

**EXHIBIT B**

**Assumed Executory Contracts**

| Name of Contracting Party | Title | Date Entered Into |
|---|---|---|
| Gerber Products Company | Supply Agreement | December 1, 2009 |
| Ripple Foods, Inc. | Co-Packing Agreement | September 15, 2017, as amended |
| Local No. 305 (Teamsters, Dairy, Bakery & Food Processors, Industrial, Technical & Automotive) | Plant and Drive Agreement | March 1, 2014 |
| Local No. 305 (Teamsters, Dairy, Bakery & Food Processors, Industrial, Technical & Automotive) | Labor Agreement | September 1, 2016 |

**EXHIBIT C**

**<u>Assumed Liabilities</u>**

The term "Assumed Liabilities" means, collectively, all of the following:

1. The obligations of Sellers arising after the Closing Date under any Assumed Executory Contract (listed on <u>Exhibit B</u> to this Agreement).

2. Obligations with respect to the Acquired Assets to the extent that such obligations accrue and are required to be performed from and after the Closing Date.

3. The Permitted Encumbrances.

# EXHIBIT D

## Employees

Schedule 1 – Key Employees

| Name | Title | Department |
|------|-------|------------|
| R▮ W▮ | General Manager | Management |
| J▮ P▮ | Plant Manager | Management |
| K▮ P▮ | Plant Manager | Management |
| K▮ R▮ | QA Manager | Management |
| A▮ S▮ | Supervisor | Management |
| T▮ M▮ | Controller | Management |
| A▮ S▮ | Admin | Management |

Schedule 2 – Other Employees

| Name | Title | Department |
|------|-------|------------|
| C▮ J▮ | Caser Operator (Yogurt EP Prod) | Production |
| D▮ C▮ | Mix Operator (Yogurt EP Prod) | Production |
| E▮ R▮ | Mix Operator (Yogurt EP Prod) | Production |
| G▮ H▮ | Filler Operator (Yogurt EP Prod) | Production |
| J▮ C▮ | Production Lead | Production |
| M▮ W▮ | Pasteurizer (Yogurt EP Prod) | Production |
| R▮ R▮ | Caser Operator (Yogurt EP Prod) | Production |
| R▮ S▮ | Warehouse (Yogurt EP Prod) | Production |
| S▮ C▮ | Caser Operator (Yogurt EP Prod) | Production |
| S▮ P▮ | Pasteurizer (Yogurt EP Prod) | Production |

| | | |
|---|---|---|
| T█████J████ | Sanitation Technician | Production |
| C█████B███H████████ | Utility Worker (Milk WP Prod) | Production |
| E█████C███████ | Dispenser Filler Operator (Milk WP Prod) | Production |
| J███S██████ | Filler Operator (Milk WP Prod) | Production |
| K████████K████ | Pasteurizer (Milk WP Prod) | Production |
| L███L████ | Filler Operator (Milk WP Prod) | Production |
| M██████V██████ | Filler Operator (Milk WP Prod) | Production |
| W████P██████ | Filler Operator (Ice Cream) | Production |
| C████████D█████ | Day Shift Cooler (Milk Storage) | Production |
| D███P██████ | Day Whse Supervisor (Milk Storage) | Production |
| E█████J█████ | Day Shift Cooler (Milk Storage) | Production |
| F█████W██████ | Day Shift Cooler (Milk Storage) | Production |
| J█████P████ | Night Shift Cooler (Milk Storage) | Production |
| T████C███████ | Production Supervisor (Yogurt EP Prod) | Production |
| D███P██████ | Maintenance Mechanic Forman (Maintenance WP | Maintenance |
| M█████P██████ | Maintenance Mechanic Forman (Maintenance WP | Maintenance |
| T███Y██████ | Maintenance Mechanic Forman (Maintenance WP | Maintenance |
| C███B████ | Driver (DC) | Transportation |
| C████████C██████ | Driver (DC) | Transportation |
| T██████B█████ | Driver (DC) | Transportation |
| J████W█████ | DC Supervisor (DC) | Transportation |

| K███ S████ | Technician (East QA) | Quality Assurance |
|---|---|---|
| B███ P██ | Technician (West QA) | Quality Assurance |
| D███ A████ | Technician (West QA) | Quality Assurance |
| J█ B████ | QA Compliance Officer (West QA) | Quality Assurance |
| D██ C████ | Sanitation Manager | Sanitation |
| M███ B███ | Forklift Operator (Warehouse) | Warehouse |

**EXHIBIT E**

**Form of Bill of Sale**

**THIS BILL OF SALE** dated as of _____, by and among LYRICAL FOODS, INC., a Delaware corporation ("Purchaser"), SUNSHINE DAIRY FOODS MANAGEMENT, LLC, an Oregon limited liability company, and KARAMANOS HOLDINGS, INC., an Oregon corporation (each a "Seller", collectively the "Sellers").

**WHEREAS,** the parties hereto have entered into an Asset Purchase Agreement dated as of [_____], 2018 (the "Purchase Agreement") providing for the acquisition by Purchaser of certain assets of Sellers, and the parties now desire to carry out such transaction by Sellers' execution and delivery to Purchaser of this instrument evidencing the vesting in Purchaser of all of the assets and rights of Sellers hereinafter described. Capitalized terms used but not defined herein have the meanings given them in the Purchase Agreement.

**NOW, THEREFORE,** in consideration of the premises and of other valuable consideration to Sellers in hand paid pursuant to the Purchase Agreement, at or before the execution and delivery hereof, the receipt and sufficiency of which by Sellers are hereby acknowledged, Sellers hereby convey, grant, sell, transfer, set over, assign, remise, release and deliver unto Purchaser, its successors and assigns forever, effective as of 12:01 a.m. Pacific Time on the date hereof (the "Effective Time"), all of Sellers right, title and interest in and to the Acquired Assets, free and clear of any Encumbrances, without representation or warranty, express or implied.

PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ACQUIRED ASSETS OTHER THAN AS SET FORTH IN THE PURCHASE AGREEMENT. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ACQUIRED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT, IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE ACQUIRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

Sellers hereby covenant that, from time to time after the delivery of this instrument, at Purchaser's request and without further consideration, Sellers will do, execute, acknowledge, and deliver, or will cause to be done, executed, acknowledged and delivered, all and every such

further acts, deeds, conveyances, transfers, assignments, powers of attorney and assurances as reasonably may be required, and in form and substance reasonably acceptable to Purchaser, to effectively convey, transfer to and vest in Purchaser, and to put Purchaser in possession of, any of the Acquired Assets.

Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than Purchaser and its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or condition hereof, and all of the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of Purchaser and its successors and assigns.

This instrument is executed by, and shall be binding upon, Sellers and their successors and assigns for the uses and purposes above set forth and referred to, effective as of the Effective Time.

This instrument shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of Oregon, without regard to its conflict of law principle provisions.

To the extent this Bill of Sale is inconsistent with any terms or conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control.

This instrument may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

*[Signature pages follow.]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale or caused this Bill of Sale to be executed on their behalf by a duly authorized officer as of the date first set forth above.

**SELLERS:**

**SUNSHINE DAIRY FOODS MANAGEMENT, LLC.**

By:_____
  Name:   Daniel J. Boverman
  Title:    Chief Restructuring Officer

**KARAMANOS HOLDINGS, INC.**

By:_____
  Name:   Daniel J. Boverman
  Title:    Chief Restructuring Officer

**IN WITNESS WHEREOF**, the parties hereto have executed this Bill of Sale or caused this Bill of Sale to be executed on their behalf by a duly authorized officer as of the date first set forth above.

**PURCHASER:**

**LYRICAL FOODS, INC.**

By:_____
     Name:  Rob Leibowitz
     Title:    CEO

**EXHIBIT F**

**Form of Assignment and Assumption Agreement**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is entered into as of _____, by and among SUNSHINE DAIRY FOODS MANAGEMENT, LLC, an Oregon limited liability company, KARAMANOS HOLDINGS, INC., an Oregon corporation (each an "Assignor", and collectively "Assignors"), and LYRICAL FOODS, INC., a Delaware corporation ("Assignee").

**W I T N E S E T H:**

WHEREAS, Assignors and Assignee entered into that certain Asset Purchase Agreement dated as of [_____], 2018 (the "Purchase Agreement"; capitalized terms used but not otherwise defined herein have the meanings given them in the Purchase Agreement); and

WHEREAS, pursuant to the Purchase Agreement, Assignors have agreed to assign certain rights and agreements to Assignee, and Assignee has agreed to assume certain obligations of Assignors, as set forth therein and herein.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually covenant and agree as follows:

1.      Effective as of 12:01 a.m. Pacific Time on the date hereof, Assignors hereby sell, transfer and assign (collectively the "Assignment") to the Assignee, and Assignee hereby assumes and agrees to pay, perform and discharge, each and all of the Assumed Liabilities, as that term is defined in the Purchase Agreement.

2.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

3.      This Agreement shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of Oregon, without regard to its conflict of law principle provisions and rules.

4.      To the extent this Agreement is inconsistent with any terms or conditions in the Purchase Agreement, the Purchase Agreement shall control.

5.      This Agreement may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the date first set forth above.

**ASSIGNORS:**

**SUNSHINE DAIRY FOOD MANAGEMENT, LLC**

By:_____

    Name:    Daniel J. Boverman
    Title:     Chief Restructuring Officer

**KARAMANOS HOLDINGS, INC.**

By:_____

    Name:    Daniel J. Boverman
    Title:     Chief Restructuring Officer

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the date first set forth above.

**ASSIGNEE:**

**LYRICAL FOODS, INC.**

By:_____
     Name:  Rob Leibowitz
     Title:    CEO

## Assumed Executory Contracts

| NO. | Name of Contracting Party | Title | Date Entered Into | Cure Amounts |
|---|---|---|---|---|
| 1 | ADS Group<br>PO Box 15270<br>Irvine, CA 92623 | Lease assigned from Balboa Capital Corporation -UCC #91069271; Balboa Acct No. 214006-005 - Lease of 4 Trailers; Quarterly Payments of $8785.35 5 Qtrly Payments | | $0.00 |
| 7 | Elm Services<br>PO Box 15270<br>Irvine, CA 92623 | Lease assigned from Balboa Capital Corporation - UCC #90451311; Balboa Acct No. 214006-001 - Lease of East Plant Filler; 2 Quarterly payments of $8,223/Qtr 2 Qtrly Payments | | $19,985.90 |
| 8 | Elm Services<br>PO Box 15270<br>Irvine, CA 92623 | Lease assigned from Balboa Capital Corporation - UCC #90548548; Balboa Acct No. 214006-002 -Lease of A&E Case Erector + Taper; Quarterly payments of$11,122.03 - 7 Qtrly Payments | | $25,057.97 |
| 9 | Gerber Products Company | Supply Agreement | December 1, 2009 | |
| 11 | Local No. 305 (Teamsters, Dairy, Bakekry & Food Processors, Industrial, Technical & Automotive) | Plant and Drive Agreement | March 1, 2014 | $0.00 |
| 12 | Local No. 305 (Teamsters, Dairy, Bakekry & Food Processors, Industrial, Technical & Automotive) | Labor Agreement | September 1, 2016 | $0.00 |
| 22 | Ripple Foods, Inc. | Co-Packing Agreement | September 15, 2017, as amended | |
| 23 | Strada Capital Corporation<br>23046 Avenida De La Carlota #350<br>Laguna Hills, CA 92653 | Equipment Agreement | | $10,150.20 |
| 24 | Summit Funding Group, Inc.<br>Lease Administration Group<br>PO Box 63-6488<br>Cincinnati, OH 45263 | Lease of MilkoScan Mars system - UCC 90718706; Monthly payments of $737.69 - Expires 6/1/2021 | | $670.63 |
| 26 | TCF Equipment Finance<br>11100 Wayzata Blvd #801<br>Hopkins, MN 55305 | Equipment Lease No. 214006-006 Leased Equipment: Combi America case sealer model TBS100FC, S/N TB181185 and a Lantech case erector, Model 300, S/N CE000402 | | $8,308.31 |

<u>In re Sunshine Dairy Foods Management, LLC</u>;
Bankruptcy Case No. 18-31644-pcm11 (Lead Case);
<u>In re Karamanos Holdings, Inc.</u>;
Bankruptcy Case No. 18-31646-pcm11
Service List

Sunshine Dairy Foods
   Management, LLC
Attn: Norman Davidson, III
801 NE 21st Ave.
Portland, OR 97232

Karamanos Holdings, Inc.
Attn: Norman Davidson, III
801 NE 21st Ave.
Portland, OR 97232

Valley Falls Farm, LLC
c/o Bryan P. Coluccio, V.P. and
General Counsel Keystone-Pacific, LLC
18555 SW Teton Avenue
Tualatin, OR 97062
(Un. Sec. Cred. Comm. Chairperson)

Scott Laboratories Inc.
Attn: Jill Skoff, Accting Assistant
PO Box 4559
Petaluma, CA 94955

Sorrento Lactalis, Inc.
c/o Phillips Lytle LLP
Attn: Angela Z. Miller
125 Main Street
Buffalo, NY 14203