IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Sunshine Dairy Foods Management, LLC, and<br>Karamanos Holdings, Inc.<br><br>Debtors-in-Possession. | Bankruptcy Case Nos.<br><br>18-31644-pcm11 (Lead Case)<br><br>18-31646-pcm11<br><br>**NOTICE OF BIDDING PROCEDURES** |

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") entered on December 24, 2018 [Docket No. 619] (the "Bidding Procedures Order") in the above-captioned jointly administered Chapter 11 cases (the "Chapter 11 Cases") of Sunshine Dairy Foods Management, LLC ("Sunshine") and Karamanos Holdings, Inc. ("KHI") (collectively, the "Debtors").

1. These Bidding Procedures set forth the process by which Karamanos is authorized to conduct a bidding process and auction (the "Auction") for the sale the ("Sale") of certain assets (the "Acquired Assets") on the terms substantially set forth in the Real Estate Purchase and Sale Agreement, dated as of November 27, 2018 and attached as Exhibit 1 to KHI's Motion for Approval of Bidding Procedures, Overbid Protections and Expense Reimbursements, and Form and Manner of Notice of Bidding Procedures (the "PSA"), by and among KHI and NBP Capital, LLC (the "Stalking Horse Bidder"). The Acquired Assets consist of the assets described in **Exhibit A** attached hereto.

The Sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the PSA, as the same may be amended pursuant to the terms hereof, subject to the receipt of higher and otherwise better bids in accordance with these Bidding Procedures. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the PSA.

**Copies of the Bidding Procedures Order, the PSA, and other documents related thereto are available upon request to KHI's counsel, by telephone at (503) 417-0500, or by e-mail at mperry@portlaw.com.**

A. **Approval of Stalking Horse Bid Protections.**

The Bidding Procedures Order approved, among other things, a reimbursement of all reasonable costs and expenses of Stalking Horse incurred in connection with Stalking Horse Bidder's efforts to purchase the Acquired Assets and in negotiating and consummating the transactions contemplated by the PSA (including, without limitation, the fees and expenses of

Page 1 of 9 – NOTICE OF BIDDING PROCEDURES
{00225981:5}

counsel), up to $225,000 (the "Expense Reimbursement").  The Expense Reimbursement is payable to the Stalking Horse Bidder upon the earlier of KHI entering into an agreement to consummate, or consummating, an Alternative Transaction, as defined in the PSA.

**B.     Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid (a "Potential Bidder") must, on or before **January 17**, **2019 at 5:00 p.m**. (Pacific Time) (the "Bid Deadline") deliver (unless previously delivered) the following documents along with an offer for the Acquired Assets in accordance with Section D below (the "Bid Documents"):

   a.   an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non- solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder and the Debtors (the "Confidentiality Agreement"); and

   b.   proof by the Potential Bidder of its financial capacity to close a proposed transaction, as required by this Notice, which may include current unaudited or verified financial statements of, or verified non-contingent financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which must be satisfactory to KHI.

The Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtors | Counsel for Sunshine |
|---|---|
| Karamanos Holdings, Inc.<br>Sunshine Dairy Foods Management, LLC<br>c/o Norman Davidson III<br>630 West Duarte Road, #208<br>Arcadia, California 91007 | Douglas R. Ricks<br>Vanden Bos & Chapman LLP<br>319 SW Washington St., Ste. #520<br>Portland, OR 97204 |
| **Counsel for Karamanos** | **Debtor Contact** |
| Nicholas J. Henderson,<br>Motschenbacher & Blattner LLP<br>117 SW Taylor St., Suite 300<br>Portland, OR 97204 | Sunshine Dairy Foods Management, LLC<br>c/o Daniel J. Boverman, CTP, Chief Restruct. Officer<br>Boverman & Associates, LLC<br>11285 SW Walker Rd<br>Portland, OR 9725 |

Within forty-eight (48) hours after a Potential Bidder delivers the Bid Documents, KHI shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Acquired Assets. Only those Potential Bidders that have submitted acceptable Bid Documents (each, an "<u>Acceptable Bidder</u>") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**C.     Access to Due Diligence.**

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non- public information. KHI shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent KHI provides any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, KHI shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein) and KHI shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, KHI shall not, except with respect to the Acquired Assets, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement. Debtor shall provide to Stalking Horse Bidder any due diligence information provided to Acceptable Bidders that was not previously provided to Stalking Horse Bidder.

KHI along with its advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* KHI may decline to provide such information to Acceptable Bidders who, in KHI's reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these

**The Debtors have designated Daniel J. Boverman to coordinate all reasonable requests for additional information and due diligence access.**

Bidding Procedures or the PSA. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

**D.     Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must, by the Bid Deadline, deliver to (i) the Debtors, (ii) their counsel and (iii) the Debtor Contact, which shall be shared with the Stalking Horse Bidder within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtors to satisfy each of the following conditions:

   a. **Bidder Identity and Authorization.** Each Bid must fully disclose the identity of each entity that will be participating in such bid and the name of any affiliates, insiders, or former insiders of the Debtors that participated in submitting the bid, including any proposed designee(s).  Further, each Bid must provide written evidence that the Acceptable Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and execution and delivery of the necessary transaction documents, or a representation that no such authorization and approval is required.

   b. **Minimum Bid Amount.** The minimum opening bid from any Acceptable Bidder must include a cash purchase price that is at least $475,000 (*i.e.*, the sum of the maximum Expense Reimbursement and an initial bid increment of $250,000) greater than the cash purchase price set forth in the PSA;

   c. **Bid Deposit.** Each Bid (other than the Stalking Horse Bid) must be accompanied by a cash deposit the greater of $857,500 or 10% of the proposed gross purchase price (the "Good Faith Deposit"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account;

   d. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide offer to purchase the Acquired Assets;

   e. **Same or Better Terms**. Each Bid must be accompanied by clean and duly executed transaction documents, along with a copy of the PSA that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to KHI than the PSA or inconsistent with these Bidding Procedures;

   f. **Alternative Transactions**.  KHI may consider a bid proposing a transaction other than a sale as set forth in the PSA so long as such bid (i) proposes a transaction that would close substantially in the same time frame as the Initial Bid; and (ii) is not subject to or conditioned upon any financing contingencies or the outcome of due diligence.  KHI reserves the right to aggregate separate bids in determining whether one or more of a combination of bids, in the aggregate, constitute a higher or

otherwise better offer;

g. **No Contingencies.** A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; and/or (iv) any third-party consents;

h. **Irrevocable.** Each Bid must remain irrevocable until the closing of the Successful Bid (as defined below);

i. **Joint Bids.** KHI will be authorized to approve joint Bids in KHI's exercise of its reasonable good faith business judgment on a case-by-case basis, subject to Section 363(n) of the Bankruptcy Code;

j. **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with their advisors, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate in the Sale of the Acquired Assets and the assumption of liabilities as set forth the PSA, including payment of any cure amount that will be paid by the purchaser with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

k. **No Fees.** The Bids must not be subject to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

l. **Jurisdiction.** Each bidder consents to the jurisdiction of the Bankruptcy Court as to all matters and disputes arising out of or related to the Bid, the Auction, the Sale, and all related matters.

E. **Qualified Bids.**

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, KHI shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction. Any Bid that is not deemed a "Qualified Bid" shall not be considered by KHI.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The PSA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.  Bid Deadline.**

Qualified Bids must be received by each of the Debtors, their counsel, and the Debtor Contact, in each case so as to be actually **received no later than the Bid Deadline of January 17, 2019 at 5:00 p.m. (prevailing Pacific Time).**

**G.  Evaluation of Qualified Bids.**

Prior to the Auction, KHI shall evaluate Qualified Bids and, in consultation with its advisors, identify the Qualified Bid that is, in KHI's judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, but in no event later than five (5) business days prior to the date of the Auction, KHI shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid. KHI shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.  No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the PSA will be deemed the Successful Bid (as defined herein) and KHI will pursue entry of an order by the Bankruptcy Court approving the PSA and authorizing the Sale of the Acquired Assets to the Stalking Horse Bidder at the Sale Hearing.

**I.  Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then KHI shall conduct the Auction with respect to the Acquired Assets. The Auction shall commence on **January 24, 2019 at 10:00 a.m. (Pacific Time)** at the offices of Motschenbacher & Blattner, LLP, 117 SW Taylor St., Suite 300, Portland, OR 97204, or such later time or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders upon 24 hours' notice.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

    a.    the Auction will be conducted openly;

    b.    only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

    c.    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

    d.    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

    e.    bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the

Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $100,000 net value to KHI;

**f.** bidding rounds shall continue until no Qualified Bidder has made a bid during a bidding round, whereupon the last highest and best bid at the close of the immediately preceding round shall, subject to Section J below, be deemed the Successful Bid (as defined below). Bidding rounds will last no longer than 15 minutes, and the bidding round will end if new bids are not communicated by Bidders during that time period;

**g.** each Qualified Bidder will be informed of the terms of the previous Bids;

**h.** the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

**i.** at the beginning of each round, each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

**j.** absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by KHI after consultation with its advisors from time to time on the record at the Auction; <u>provided</u>, <u>that</u>, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the PSA with respect to these Bidding Procedures; and

**k.** Any disputes that arise regarding the Auction shall be resolved by the Bankruptcy Court.

**J.  Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), KHI, in the exercise of its reasonable, good-faith business judgment, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties KHI in good faith believes is materially more beneficial to KHI than the Stalking Horse Bid (the "<u>Successful Bid</u>"), which will be determined by considering, among other things:

**a.** the number, type and nature of any changes to the PSA as appropriate;

**b.** the total expected consideration to be received by the KHI;

**c.** the likelihood of the bidder's ability to close a transaction and the timing thereof; and

**d.** the expected net benefit to the estates.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and KHI shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

KHI will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for KHI's assets and is in the best interests of KHI's estate.

If an Auction is held, KHI shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.     Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the PSA if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on **January 28, 2019 at 3:00 p.m.** (prevailing Pacific Time), or as soon thereafter as counsel may be heard, before the Honorable Peter C. McKittrick, United States Bankruptcy Judge in the United States Bankruptcy Court for the District of Oregon, 1001 SW 5th Ave #700, Courtroom # 1, Portland, OR 97204.

**L.     Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by KHI after consultation with its advisors, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

KHI will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid. In the event the Stalking Horse Bidder is designated as the Back-Up Bidder, the Stalking Horse Bidder may, at its election, terminate the PSA. In the event of such termination, and notwithstanding any other provision in this Notice, Stalking Horse Bidder would not have any liability to Seller, would be entitled

to return of its Good Faith Deposit, and would be entitled to the Expense Reimbursement.

Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.     Expense Reimbursement.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder (or the Stalking Horse Bidder elects not to have its bid be the Back-Up Bid), and KHI enters into an agreement to consummate, or consummates, an Alternative Transaction, KHI shall be obligated to pay to the Stalking Horse Bidder the Expense Reimbursement and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the PSA.

**N.     Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for the Acquired Assets. Subject to Section L, above, if the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, KHI.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within two (2) business days after consummation of the Sale of the Acquired Assets.

The initial $600,000 deposit by the Stalking Horse Bidder will be held in a segregated, interest-bearing account (the "Account") at an escrow company approved by KHI and the Stalking Horse Bidder, and pursuant to escrow instructions reasonably acceptable to both KHI and the Stalking Horse Bidder.  The full amount of the deposit, and any interest thereon, will remain in the account until disbursed pursuant to the terms of the PSA or further order of the Bankruptcy Court.

**O.     Reservation of Rights.**

KHI reserves its rights to, in any manner consistent with KHI's fiduciary duties and applicable law, modify these Bidding Procedures in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the PSA) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Assets (subject to any restrictions set forth in the PSA).

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

# EXHIBIT A

**PARCEL 1:**

All of Lots 1, 2, 3, 4, 5, 6, 7 and 8, Block 34, SULLIVAN'S ADDITION to the City of East Portland, City of Portland, Multnomah County, Oregon.

**PARCEL 2:**

Beginning at the Southeast corner of Lot 4, Block 39, SULLIVAN'S ADDITION, City of Portland, Multnomah County, Oregon; thence North 88°12'16" West, along the South line of said Block 39, a distance of 64.59 feet; thence, leaving said South line, going North 38°08'00" East a distance of 124.14 feet to a point on the North line of Lot 6, said Block 39; thence South 88°12'16" East, along said North line, a distance of 11.32 feet; thence, leaving said North line, going South 23°41'30" East a distance of 110.78 feet to a point on the South line of said Block 39; thence North 88°12'16" West, along said South line, a distance of 67.96 feet to the point of beginning.

**PARCEL 3:**

Beginning at the Northwest corner of Lot 2, Block 39, SULLIVAN'S ADDITION, City of Portland, Multnomah County, Oregon; thence South 88°12'16" East, along the North line of said Lot 2, a distance of 79.49 feet; thence, leaving said North line, going South 37°56'00" West a distance of 134.79 feet to a point on the West line of said Block 39; thence North 01°47'44" East, along said West line, a distance of 108.85 feet to the point of beginning.

In re Sunshine Dairy Foods Management, LLC
Ch 11 Bankruptcy Case No. 18-31644-pcm11(Lead Case)
In re Karamanos Holdings, Inc.
Ch 11 Bankruptcy Case No. 18-31646-pcm11

# CERTIFICATE - TRUE COPY

DATE: December 27, 2018

DOCUMENT: NOTICE OF BIDDING PROCEDURES

I hereby certify that I prepared the foregoing copy of the foregoing named document and have carefully compared the same with the original thereof and it is a correct copy therefrom and of the whole thereof.

# CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document(s) to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the following parties:

> See Attached List. (The original Service List is attached to the original copy filed with the Court only. Creditors may request a copy of the Service List by contacting the undersigned.)

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R. Bankr.P. 9001(9) and 2002(g)(4).

I hereby further certify that the foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

  Dated: December 27, 2018

                              MOTSCHENBACHER & BLATTNER LLP

                              By: /s/ Nicholas J. Henderson
                              Nicholas J. Henderson, OSB #074027
                              Of Attorneys for Debtor-in-Possession
                              Karamanos Holdings, Inc.

Page 1 of 1 – CERTIFICATE OF SERVICE
{00232921:1}

In re Sunshine Dairy Foods Management, LLC;
Bankruptcy Case No. 18-31644-pcm11 (Lead Case);
In re Karamanos Holdings, Inc.;
Bankruptcy Case No. 18-31646-pcm11

# SERVICE LIST

**United States Trustee:**

US Trustee, Portland
620 SW Main St #213
Portland, OR 97205

**Debtors:**

Karamanos Holdings, Inc.
Sunshine Dairy Foods
Management, LLC
c/o Norman Davidson III
630 West Duarte Road, #208
Arcadia, California 91007

Karramanos Holdings, Inc.
Sunshine Dairy Foods
Management, LLC
c/o Daniel J. Boverman
Boverman & Associates, LLC
11285 SW Walker Rd
Portland, OR 9725

**Unsecured Creditors Committee:**

Timothy A Solomon
Leonard Law Group LLC
1 SW Columbia
Suite 1010
Portland, OR 97258

Valley Falls Farm, LLC
c/o Bryan P. Coluccio, V.P./
General Counsel
Keystone-Pacific, LLC
18555 SW Teton Avenue
Tualatin, OR 97062

High Desert Milk
c/o Steven Tarbet, CFO
1033 Idaho Avenue
Burley, ID 83318

Electric Inc.
c/o Christopher C. Winston,
President
P.O. Box 820386
Vancouver, WA 98682

Ernest Packaging Solutions
c/o Jennifer Delgadillo
Director of Corp. Credit
5777 Smith Way St.
Commerce, CA 90040

Stiebrs Farms, Inc
c/o Janis E. Stiebrs, President
P.O. Box 598
Yelm, WA 98597

**S.E.C.**

SEC
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles CA 90071-9591

**Oregon D.E.Q.**

Dept. of Environmental Quality
Attn: Richard Whitman, Director
700 NE Multnomah Street, #600
Portland, OR 97232-4100

**EPA:**

Environmental Protection Agency
Office of the Administrator,
Mail Code 1101A
1200 Pennsylvania Ave. N.W.
Washington, DC 20460

U.S. EPA, Region 10
c/o Chris Hladick, Regional Administrator
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

U.S. EPA Oregon Operations Office
805 SW Broadway, Suite 500
Portland, OR 97205

**Secured Creditors:**

First Business Capital Corp.
401 Charmany Dr.
Madison, WI 53719

First Business Capital Corp.
c/o Chuck Batson, Pres. & CEO
401 Charmany Dr
Madison, Wi 53719

First Business Capital Corp.
c/o Albert N. Kennedy
Tonkon Torp LLP
888 SW 5th Ave Ste 1600
Portland OR 97204

First Business Capital Corp.
c/o Michael Fletcher
Tonkon Torp LLP
888 SW 5th Ave Ste 1600
Portland OR 97204

Multnomah Assessment & Taxation
501 SE Hawthorne, 1st Floor
P.O. Box 5007
Portland, OR 97208

Multnomah County Tax Assessor
Attn Angelika Loomis, Agent
PO Box 2716
Portland, OR 97208-2716

Carlos A. Rasch
Senior Asst. County Attorney
Office of Multnomah County Attorney
501 SE Hawthorne Blvd., Suite 500
Portland, Oregon 97214

**Initial Bidder:**

NBP Capital, LLC
Attn: Lauren Noecker
9 SE 3rd Avenue Suite 100
Portland, OR 97214

In re Sunshine Dairy Foods Management, LLC;
Bankruptcy Case No. 18-31644-pcm11 (Lead Case);
In re Karamanos Holdings, Inc.;
Bankruptcy Case No. 18-31646-pcm11

## SERVICE LIST

NBP Capital, LLC
c/o Sussman Shank LLP
Attn: Howard N. Levine
1000 SW Broadway, Suite 1400
Portland, OR 97205

NBP Capital, LLC
c/o Hathaway Larson LLP
Attn: Jeni Meyer
1331 NW Lovejoy St., Ste. 950
Portland, OR 97209

**IRS:**

IRS
Attn: Attorney General
of United States
10th Constitution NW #4400
Washington, DC 20530

IRS
Attn: Civil Process Clerk
U.S. Attorney
District of Oregon
1000 SW 3rd, #600
Portland, OR 97204-2936

IRS
Centralized Insolvency
Operation
P. O. Box 7346
Philadelphia, PA 19101

**Oregon Dept. of Revenue:**

ODR
ATTN: Bankruptcy Unit
955 Center St NE
Salem, OR 97301

ODR
c/o Ellen Rosenblum, Attorney
General
Oregon Department of Justice
1162 Court St, NE
Salem, OR 97301-4096

**U.S. Attorney's Office:**

U.S. Attorney,
District of Oregon
1000 SW 3rd, #600
Portland, OR 97204-2936

**Non-Debtor Parties to Executory Contracts and Leases to Be Assumed and Assigned:**

Verizon Wireless (VAW) LLC
d/b/a Verizon Wireless
180 Washington Valley Road
Bedminster, NK 07921
Attn: Network Real Estate

Verizon Wireless (VAW) LLC
c/o CT Corp. System, Reg.
Agent
780 Commercial St. SE
Suite 100
Salem, OR 97301-3465

**Special Notice:**

Scott Laboratories Inc.
Attn: Jill Skoff, Accting
Assistant
PO Box 4559
Petaluma, CA 94955

Sorrento Lactalis, Inc.
c/o Phillips Lytle LLP
Attn: Angela Z. Miller
125 Main Street
Buffalo, NY 14203

CBRE Group, Inc
Wells Fargo Center
1300 SW Fifth Ave #3000
Portland, OR 97201

**Electronic Mail:**
**The foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system.**

{00232611:2}  December 27, 2018